1

2

3            **UNITED STATES DISTRICT COURT**

4            **EASTERN DISTRICT OF CALIFORNIA**

5

6    LEONARD RANSOM, JR.,                    Case No. 1:11-cv-01709-LJO-EPG (PC)

7             Plaintiff,                     FINDINGS AND RECOMMENDATIONS,
                                             RECOMMENDING THAT DEFENDANTS'
8        v.                                  RULE 12(b)(6) MOTIONS TO DISMISS BE
                                             GRANTED, WITH LEAVE TO AMEND
9    DANNY HERRERA, et al.,
                                             OBJECTIONS, IF ANY, DUE WITHIN THIRTY
10            Defendants.                    DAYS

11                                           (ECF NOS. 32 & 38)

12                                           ORDER GRANTING DEFENDANT
                                             BRANNUM'S MOTION TO STRIKE
13                                           PLAINTIFF'S CLARIFICATION AND
                                             OBJECTION TO DEFENDANT BRANNUM'S
14                                           REPLY IN SUPPORT OF DEFENDANT
                                             BRANNUM'S MOTION TO DISMISS
15

16                                           (ECF NO. 57)

17                                           ORDER DENYING DEFENDANTS CASTRO
                                             AND HERRERA'S REQUEST FOR JUDICIAL
18                                           NOTICE

19                                           (ECF NO. 32-2).
20   ─────────────────────────────

21         Leonard Ransom, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights

22   action pursuant to 42 U.S.C. § 1983.  Plaintiff's complaint alleges that certain prison officials

23   filed false charges against him through prison disciplinary proceedings, which in one case led to a

24   criminal case.  Plaintiff was exonerated of these charges.  In the meantime, Plaintiff had spent

25   time in Administrative Segregation and also participated in parole proceedings that referenced the

26   allegedly false charges.  Plaintiff primarily claims that the false charges violated his due process

27   rights.

28         For the reasons described below, the Court recommends dismissing Plaintiff's complaint

                                             1

with leave to amend.  In order to state a claim for a violation of due process, Plaintiff must allege that he was deprived of a liberty interest without Due Process.  Here, Plaintiff was exonerated of the charges and not subjected to additional punishment as a result of the charges.  Although he was placed in Administrative Segregation and the false charges were referenced in his parole hearing, these deprivations do not amount to a loss of a constitutionally protected liberty interest such that Plaintiff was entitled to procedural due process.  Additionally, the mere filing of false disciplinary charges does not violate due process; rather it entitles a plaintiff to procedures to resolve the charges.  If charges are filed in order to penalize Plaintiff for his exercise of constitutional rights, such a situation could be a violation of constitutional rights.  It does not appear to be the case here, where Plaintiff has alleged that the Defendants filed false charges in retaliation for Plaintiff assaulting a fellow officer, which is not constitutionally protected conduct.  Nevertheless, the Court recommends giving Plaintiff leave to amend to assert facts, if any, that would indicate that Defendants filed the charges in retaliation for Plaintiff exercising his constitutional rights.

## I.       BACKGROUND

The Court[1] previously screened Plaintiff's original complaint and found that it stated claims against Sergeant Ricky Brannum and Correctional Officer Danny Herrera for conspiracy, and against defendant Lieutenant L. Castro for violation of Plaintiff's due process rights.  (ECF No. 9).  Regarding the conspiracy claim against Defendants Brannum and Herrera, while noting that a section 1983 conspiracy claim requires a conspiracy to violate a Plaintiff's constitutional rights, the Court did not state what constitutional rights were subject to the conspiracy.  Instead, the Court concluded that "Plaintiff has alleged facts, if true, state a claim for relief against Defendants Brannum and Herrera on his conspiracy claim.  The facts alleged indicate that Brannum, in the presence of Herrera and Plaintiff, stated his intention to falsely charge Plaintiff with staff assault."  (ECF No. 9, p. 6)  Regarding the due process claim against Defendant Castro, the Court concluded, "Plaintiff has alleged facts indicating that he was charged with a disciplinary violation,

---

[1] Magistrate Judge Gary S. Austin was the presiding magistrate judge until October 13, 2015. (ECF No. 25).

and that he was falsely accused.  Plaintiff was exonerated based in part on a finding that a correctional officer gave false testimony.  Plaintiff also alleges that there was a specific finding that his due process rights had been violated, and that the pending disciplinary charged was responsible in part of his finding of unsuitability for parole.  Plaintiff has therefore stated a colorable claim for relief against Lt. Castro for a Due Process violation."  (ECF No. 9, at p. 7).

Plaintiff initially agreed to stand on his original complaint, and the Court authorized service of that complaint.  (ECF No. 16).  However, Plaintiff then asked to correct two errors in his complaint: changing Defendant Castro's first initial from L. to J., and replacing the date "4/5/09" in paragraph 24 of the complaint to "5/5/09."  (ECF No. 20).  The Court denied this request and gave Plaintiff leave to amend his complaint to make these changes. (ECF No. 22). Plaintiff proceeded to file an amended complaint with these changes.  (ECF No. 24).  Plaintiff's first amended complaint included only the defendants permitted by the Court's prior screening order, made the above-indicated changes, and was otherwise substantially similar to the prior complaint.  (ECF No. 27).  Accordingly, the Court found the first amended complaint appropriate for service.  (Id.  "This case now proceeds with Plaintiff's First Amended Complaint, against Defendants Sergeant Ricky Brannum and Correctional Officer Danny Herrera for conspiracy, and against defendant Lieutenant J. Castro for violation of due process.").

On June 7, 2016, Defendants Castro and Herrera filed a motion to dismiss.  (ECF No. 32).  On July 7, 2016, defendant Brannum filed a motion to dismiss.  (ECF No. 38).  On November 2, 2016, defendant Brannum filed a motion to strike Plaintiff's clarification and objection to defendant Brannum's reply in support of defendant Brannum's motion to dismiss.  (ECF No. 57). These motions are now before the Court.

## II.    SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges in his first amended complaint (ECF No. 24) that on March 4, 2009, while Plaintiff was incarcerated in Kern Valley State Prison, C/O Herrera and Sgt. Brannum approached Plaintiff's cell in order to transport Plaintiff to a medical appointment outside the prison.  As they approached Plaintiff's cell, Plaintiff heard Herrera say to Brannum that "this is the one with the staff assault."

Approximately ten days prior, Herrera was involved in transporting Plaintiff to a court proceeding. During the transport, Herrera continued to ask Plaintiff about his case, which involved assault against a correctional officer that is a friend of Herrera's. Plaintiff alleges that during the previous transport, Herrera became angry at Plaintiff for his unwillingness to discuss his case.

Once Herrera and Brannum arrived at Plaintiff's cell, Plaintiff began to go through the routine unclothed body search procedures, including bending and squatting. When Plaintiff squatted, Herrera ordered Plaintiff to squat "all the way down." Plaintiff alleges that he told Herrera and Brannum that because he had a bad disc in his lower back, he could not squat all the way down. After that Plaintiff alleges that Herrera and Brannum became verbally abusive. Plaintiff told them to "get away from my door, I'm not going." Brannum told Plaintiff: "I'll say you assaulted my officer." Brannum and Herrera then left.

Approximately ten to fifteen minutes later, a sergeant arrived at Plaintiff's cell, and informed him that Herrera and Brannum accused him of grabbing Herrera through the tray slot. Plaintiff was then taken to a holding cage and was examined by a nurse in order to complete a Medical Report of Injury or Unusual Occurrence.

Upon Plaintiff's return to his cell, he discussed the incident with two other inmates. Both inmates told Plaintiff what they observed and heard, and that they would testify that Plaintiff did nothing wrong. Both inmates provided declarations under penalty of perjury. The same day, Plaintiff filed a staff complaint/inmate appeal regarding the issue.

On March 17, 2009, Plaintiff was formally charged (by a Rules Violation Report ("RVR")) with battery on a peace officer. According to the charging document, Herrera alleged that Plaintiff reached his right arm through the cell port and grabbed Herrera's wrist and forearm in an attempt to gain control of Herrera. Plaintiff was advised that the RVR would be referred to the Kern County District Attorney's Office for possible criminal prosecution.

On May 5, 2009, Lt. Castro interviewed Plaintiff regarding his staff complaint/inmate appeal. Plaintiff advised Castro that he had declarations from two witnesses to the event. Castro asked Plaintiff for the declarations, and he provided her with copies. Approximately two weeks

later, Plaintiff was served with another RVR, charging Plaintiff with falsification of records or documents for submitting a false declaration.  Plaintiff alleges that the second RVR was based on Lt. Castro's interview of one of his witnesses, inmate Johnson.  When Lt. Castro asked Johnson what he knew of "Ransom," Johnson indicated that he did not know anyone by that name. Plaintiff indicates that Johnson would have known Plaintiff by "J.R.," not Ransom.

Lt. Castro denied Plaintiff's appeal, finding that the officer and Sgt. Brannum did nothing wrong.  Plaintiff alleges that Lt. Castro failed to interview the other witness, inmate Reed, failed to check Plaintiff's medical records, and failed to talk to Sgt. A. Day.

On May 15, 2009, Plaintiff was interviewed by C/O Chavez, the assigned investigative employee for the RVR charging Plaintiff with making a false declaration.  Plaintiff explained to Chavez that Johnson knew him by a different name.   Plaintiff alleges that C/O Chavez interviewed Johnson, and Johnson confirmed that he knew Plaintiff, and that Johnson had in fact authored the declaration.

On June 9, 2009, Plaintiff appeared for a previously scheduled Board of Parole hearing to determine his suitability for parole.  Plaintiff alleges that "both RVR's of 3/4/09 and 5/5/09 were in the [Life Prisoner Evaluation for the Board of Parole Hearings] [R]eport authored by I. Garza, which was before the Board, and relied on (in large part) to justify an unsuitability finding, which prompted the Board to push back [Plaintiff's] next Board hearing to 6/9/19, based, in part, on false and unsubstantiated RVRs."

Plaintiff alleges that about three days later he was exonerated on the falsification of records charge.  Plaintiff subsequently sent numerous Inmate Requests for Interviews to Lt. Castro, "to correct her error" and re-examine the appeal.  Lt. Castro never responded to the requests.

On August 14, 2009, the Kern County District Attorney's Office accepted the case for prosecution and Plaintiff was arraigned on the charges of battery on a non-inmate.  On September 10, 2010, the district attorney requested that the court dismiss the case in the interest of justice.

On July 22, 2011, a disciplinary hearing was conducted on Plaintiff's RVR charge of battery on a correctional officer.  The Senior Hearing Officer, Lt. Randall, after reviewing the

evidence, exonerated Plaintiff.  Plaintiff alleges that the following factual findings were made by Lt. Randall:

> (1) Officer Herrera did violate CCR § 3031(d); (2) Failure of the [investigative employee] to interview Sgt. Brannum is a due process violation; (3) the declarations provided a legitimate defense, and were reiterated in the [investigative employee] Report; (4) the photograph of the cell configuration suggests Inmate Reed and Inmate Johnson had the opportunity to view the search as declared; and 5) the alleged injury documented on (C.O. Herrera's [Medical Report of Injury or Unusual Occurrence]) was not consistent with the incidents of the nature of the conduct alleged.

Lt. Randall also noted that "numerous discrepancies have been identified within the documents provided for this RVR, to include due process violations that cannot be corrected at this institution.  Therefore, this RVR is being dismissed in the interest of justice."

As to his injury, Plaintiff states that he was subject to Administrative Segregation for 82 days, during which both of his parents died.  Additionally, the false charges were presented to the parole board and affected their decision to make an unsuitability finding against him.  The false charges are still located in Plaintiff's Central File, on various 128-G's, Administrative Segregation documents, and BPH documents.  "The mental, emotional, and physical deterioration of going through the court process when falsely accused, and the failure of Lt. J. Castro to rectify the matter, when falsely accused, by peace officers, cannot be overstated."

## III.   DEFENDANT BRANNUM'S MOTION TO STRIKE

On October 17, 2016, Plaintiff filed a motion to file a supplemental brief in regards to defendant Brannum's motion to dismiss.  (ECF No. 54).  The Court granted Plaintiff's motion.  (ECF No. 55).  On October 26, 2016, Plaintiff filed a "clarification and objection" to defendant Brannum's reply to Plaintiff's opposition to the motion to dismiss.  (ECF No. 56).  On November 2, 2016, defendant Brannum filed a motion to strike the clarification and objection.  (ECF No. 57).  On November 14, 2016, Plaintiff filed a supplemental brief in support of his opposition to defendant Brannum's motion to dismiss.  (ECF No. 58).  On November 28, 2016, Plaintiff filed opposition to defendant Brannum's motion to strike.  (ECF No. 60).

Defendant Brannum argues that the "clarification and objection" should be stricken

6

because it is an impermissible sur-reply. (ECF No. 57-1, p. 2). According to defendant Brannum, while the Court gave Plaintiff permission to file a supplemental brief, it did not give Plaintiff leave to file a sur-reply. (Id.). Plaintiff argues that what he filed was not a sur-reply, but mentions that Plaintiff filed the "clarification and objection" because Plaintiff needed to respond to defendant Brannum's reply. (ECF No. 60, p. 2).

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense of any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

The Court will strike Plaintiff's "clarification and objection."[2] As the point of the "clarification and objection" seems to have been to reply to Plaintiff's reply, it was in fact a sur-reply, which is not automatically allowed (see Local Rule 230(l)), and which the Court did not authorize. Additionally, while Plaintiff is not an attorney, given that Plaintiff filed a motion to file a supplemental brief (ECF No. 54), it appears that Plaintiff is aware of the requirement to ask the Court for permission in order to file additional briefing, and yet failed to do so.

## IV. DEFENDANTS' CASTRO AND HERRERA'S REQUEST FOR JUDICIAL NOTICE

Defendants Castro and Herrera filed a request that the Court take judicial notice of Plaintiff's original complaint in <u>Ransom v. State of California</u>, Eastern Dist. Case No. 1:09-cv-01688-DLB. (ECF No. 32-2). Defendants Castro and Herrera are trying to use the original complaint to show that Plaintiff was provided an opportunity to be heard at his parole hearing, and that Plaintiff was provided a statement of the reasons why he was denied parole. (ECF No. 32-1, p. 11). Notably, the document at issue is not a submission to the parole board—it is a complaint where the Plaintiff describes certain occurrences before the parole board. Plaintiff objects to the request for judicial notice. (ECF No. 46, p. 116).

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

---

[2] The Court notes that it has reviewed the "clarification and objection," and even if the Court considered it, it would not change the analysis.

readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, "[g]enerally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

The Court will deny Defendants Castro and Herrera's request for judicial notice. While the Court could take judicial notice of the fact that Plaintiff filed a complaint in a different case in this district, Defendants appear to be asking that the Court take judicial notice of facts asserted in that complaint. In other words, Defendants are attempting to use Plaintiff's own words against him. While Plaintiff's factual allegations in another complaint would be relevant for determining the underlying merits of the case, they are not properly the subject of judicial notice. Additionally, the scope of review at the motion to dismiss stage of a case is limited to the contents of the complaint.

## V.   DEFENDANTS' MOTIONS TO DISMISS

The only remaining claims are against Defendants Brannum and Herrera for conspiracy, and against Defendant Castro for violation of due process. Defendants Brannum and Herrera move to have the conspiracy claim dismissed against them on the ground that Plaintiff has no constitutional right to be free from receiving false disciplinary charges and has not alleged that there was a conspiracy to violate a specific constitutional right (ECF Nos. 32-1, p. 8 & 38-1, p 8). Defendant Castro moves to have the claim against her dismissed because Plaintiff has no constitutional right to be free from receiving false disciplinary charges, because Castro is entitled to qualified immunity, and because Plaintiff received all the due process to which he was entitled. (ECF No. 32-1, p. 7). [3]

---

[3] The Court notes that Plaintiff states in his opposition to defendant Brannum's motion to dismiss that he was responding without actually seeing a copy of the motion to dismiss. (ECF No. 52, p. 39). On September 15, 2016, Plaintiff filed a request for a copy of defendant Brannum's motion to dismiss, alleging that he never received it. (ECF No. 50). On September 26, 2016, the Court granted Plaintiff's request for a copy of the motion (ECF No. 51). However, Plaintiff's opposition was received on October 3, 2016. (ECF No. 52). Accordingly, it seems likely that Plaintiff did not get the copy of the motion before filing his opposition. However, the Court allowed Plaintiff to file a supplemental brief (ECF No. 55), and Plaintiff filed a supplemental brief on November 14, 2016 (ECF No. 58). Therefore, because Plaintiff was given an opportunity to file a response to the motion to dismiss after having the opportunity to review it, and given the similarity between defendant Herrera and Castro's motion to dismiss and defendant Brannum's motion to dismiss, the Court finds that this issue has been resolved.

1    A motion to dismiss for failure to state a claim is properly granted where the complaint

2    lacks "a cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory."

3    Conservation Force v. Salazar, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting Balistreri v.

4    Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988)).  While accepting factual allegations in

5    the complaint as true, the Court is not required to accept legal conclusions as true, and the factual

6    allegations must state a plausible claim for relief.  Maya v. Centex Corp., 658 F.3d 1060, 1067–

7    68 (9th Cir. 2011).

8    In considering a motion to dismiss for failure to state a claim, the Court generally

9    considers only the contents of the complaint and accepts as true the facts alleged in the complaint.

10   Marder, 450 at 448 (9th Cir. 2006); Shaver v. Operating Engineers Local 428 Pension Trust Fund,

11   332 F.3d 1198, 1201, 1203 (9th Cir. 2002).  Additionally, the Court construes the pleading in the

12   light most favorable to the party opposing the motion, and resolves all doubts in the pleader's

13   favor.  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir.2010).  *Pro se* pleadings are held to a less

14   stringent standard than those drafted by attorneys.  Id.

15   **VI.    ANALYSIS OF PLAINTIFF'S CLAIM FOR CONSPIRACY AGAINST**

16   **DEFENDANTS BRANNUM AND HERRERA**

17   In the Court's screening order, the Court upheld a claim against Defendants Brannum and

18   Herrera for conspiracy on the basis that "[t]he facts alleged indicate that Brannum, in the presence

19   of Herrera and Plaintiff, stated his intention to falsely charge Plaintiff with staff assault. Plaintiff

20   alleges that Herrera falsely accused him, and that Plaintiff was exonerated based upon false testimony

21   of Herrera."  (ECF No. 9)  The Court cited law indicating that there must be a conspiracy to violate

22   constitutional rights,[4] but did not specify what constitutional rights were involved in Plaintiff's

23   conspiracy claim.

24   Plaintiff alleges that the filing of false charges, which resulted in criminal charges, violated his

25   Due Process rights and his constitutional right against malicious prosecution.  (ECF No. 52, at p. 8-9).

26
27       [4] "A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of
the minds to violate constitutional rights." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)(quoting United Steel
Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)(citations omitted)), and an actual
28   deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006)(quoting Woodrum v.
Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989))."  (ECF No. 9, a p. 5-6).

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  See Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

After hearing processes, Plaintiff was exonerated and the charges were dropped, so Plaintiff did not suffer any punishment or deprivation of a liberty interest directly as a result of the false charges.  However, Plaintiff alleges his constitutional rights were nevertheless violated because he suffered from the false rules violations reports themselves.  Additionally, while the RVR charges were pending, Plaintiff was subjected to administrative segregation and his parole proceedings were negatively influenced by the charges.

The Court analyzes these questions below.

**A.  Whether the Allegedly False Charges Brought by Defendants Brannum and Herrera Deprived Plaintiff of Any Constitutional Rights**

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41. Here, Plaintiff alleges that Defendants Brannum and Herrera had a meeting on the minds to file false charges against him in retaliation for Plaintiff assaulting a fellow officer.

The Court has reviewed the law on this subject in depth and finds that filing false allegations by itself does not violate a prisoner's constitutional rights so long as (1) the prisoner receives procedural due process before there is a deprivation of liberty as a result of false allegations, and (2) the false allegations are not in retaliation for the prisoner exercising constitutional rights.  Specifically, the Ninth Circuit held in Hernandez v. Johnston, 833 F.2d 1316 (9th Cir. 1987) that inaccurate information in a prison record did not violate the prisoner's due process rights.  Id. at 1318 ("Magistrate Burgess did not discuss Hernandez' separable claim of a due process right to accurate information in his prison record.  We address the issue, and hold that Hernandez was not deprived of liberty by the presence of the challenged statements.").

10

While the Ninth Circuit has not directly addressed whether a false rules violation report alone violates a prisoner's constitutional rights, this specific issue was thoroughly addressed in a decision of this district, which was affirmed by the Ninth Circuit in an unpublished decision:

> A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986).  As long as a prisoner receives procedural due process during his disciplinary hearing, a prisoner's allegation of a fabricated prison disciplinary charge fails to state a cognizable claim for relief under § 1983.  *See Freeman,* 808 F.2d at 951 (the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); *Hanrahan v. Lane,* 747 F.2d 1137, 1140–41 (7th Cir.1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").

> Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California relying on the cases cited above have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.  *See, e.g., Conner v. Winslow,* No. EDCV 07–218 AG (AN), 2009 WL 1549737 at *18 (C.D. Cal. June 1, 2009); *Williams v. Foote,* No. CV 08–2838 CJC (JTL), 2009 WL 1520029 at *7 (C.D.Cal. May 28, 2009); *Salisbury v. Miller,* No. C 08–4680 MHP (pr), 2009 WL 743925 at *2 (N.D.Cal. Mar.18, 2009); *Meraz v. Reppond,* No. C 08–4540 MHP (pr), 2009 WL 723841 at *2 (N.D.Cal. Mar.18, 2009); *Rodgers v. Reynaga,* No. CV 1–06–1083 JAT, 2009 WL 62130 at *2 (E.D.Cal. Jan.8, 2009); *Drake v. Berg,* No. C 07–3844 PJH (PR), 2008 WL 4482848 at *1 (N.D.Cal. Oct.1, 2008); *Moore v. Thomas,* No. C 06–2105 SBA (PR), 2008 WL 4447726 at *4 (N.D.Cal. Sept.30, 2008); *Deadmon v. Grannis,* No. 06–cv–1382 LAB (WMC), 2008 WL 595883 at *10 (S.D.Cal. Feb. 29, 2008); *Carrillo v. Pena,* No. CIV S–06–2924 RRB DAD, 2007 WL 2994689 at *2 (E.D.Cal. Oct.12, 2007); *Player v. Salas,* No. 04–cv–1761 LAB (WMc), 2007 WL 2781102 at *7 (S.D.Cal. Sept. 21, 2007), *aff'd* 2009 WL 890967 (9th Cir. Apr.3, 2009); *Brookins v. Terhune,* No. CIV S–03–0916 GEB JFM, 2005 WL 3262940 at *4 (E.D.Cal. Nov.28, 2005), *adopted by* 2006 WL 647975, *aff'd* 2007 WL 2827544 (9th Cir. Sept.27, 2007).

> In this case, plaintiff alleges that defendants violated his due process rights by bringing a false rules violation charge against him.  However, as noted above, the issuance of a false disciplinary charge is not in itself a due process violation so long as prison officials comply with procedural due process requirements.  Here, plaintiff does not allege that the defendants Costa or Mendes failed to provide him with procedural due process protections.

11

1   Harper v. Costa (E.D. Cal., June 16, 2009, No. CIVS07-2149LKK DADP) 2009 WL 1684599, at

2   *2–3, subsequently aff'd (9th Cir. 2010) 393 Fed.Appx. 488.

3        Thus, Plaintiff's claim for conspiracy to violate Plaintiff's constitutional rights based on

4   Defendants Brannum and Herrera merely submitting a false rules violation report does not state a

5   cognizable claim for violation of the United States Constitution.  The facts alleged in the first

6   amended complaint do not show that the disciplinary proceedings that resulted lacked due

7   process, and indeed Plaintiff was exonerated and did not receive any punishment as a result of

8   those proceedings.  Even taking as true that Defendants Brannum and Herrera conspired to file a

9   false rules violation report against Plaintiff, this alone does not violate Plaintiff's constitutional

10  rights.

11       That does not mean that filing false charges comports with prison regulations or state law.

12  The question before this Court, however, is whether filing false allegations violated Plaintiff's

13  rights under the United States Constitution.  So long as Plaintiff received the appropriate

14  procedures after receiving the false charges against him, the fact that he received false prison

15  disciplinary charges does not violate his constitutional rights.

16       In Plaintiff's opposition, Plaintiff refers to the law regarding malicious prosecution and

17  states that because the false charges resulted in criminal charges being filed allegedly without

18  probable cause, his constitutional rights were violated because he was maliciously prosecuted.

19  The Court notes that the Supreme Court currently has before it a case (Manuel v. City of Joliet,

20  Ill., Supreme Court Case Number 14-9496) that may address the law on section 1983 claims for

21  malicious prosecution and provide additional insight in the near future.  That said, the following

22  is this Court's best understanding of the Ninth Circuit law on the issue.

23       The Ninth Circuit has held that merely filing false criminal charges, i.e. malicious

24  prosecution, does not violate a Plaintiff's constitutional rights; instead a plaintiff must allege that

25  the false criminal charges were filed in order to deprive the plaintiff of constitutional rights.  The

26  Ninth Circuit explained the rule as follows: "In [the Ninth] circuit, the general rule is that a claim

27  of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within

28  the state judicial system to provide a remedy.  However, an exception exists to the general rule

12

when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." Usher v. City of Los Angeles, 828 F.2d 556, 561–62 (9th Cir. 1987) (internal quotation marks and citations omitted).  See also Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."  (internal question marks and citations omitted, alterations in original); Freeman v. City of Santa Ana 68 F.3d 1180, 1189 (9th Cir. 1995), as amended on denial of reh'g and reh'g en banc (Dec. 29, 1995) ("Malicious prosecution, by itself, does not constitute a due process violation; to prevail Freeman must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right.").

The Awabdy Court provided some examples of constitutional rights that could be implicated by a malicious prosecution claim:

> In line with this reasoning, we have held, post-*Albright,* that a § 1983 malicious prosecution plaintiff must prove that the defendants acted for the purpose of depriving him of a "specific constitutional right," *Freeman,* 68 F.3d at 1189, but have not limited that right to one protected by the Fourth Amendment. . . .
>
> [In *Poppel*,] he stated a cognizable § 1983 claim by alleging that a zoning administrator acted maliciously and with the intent to deprive him of specific constitutional rights-"(1) freedom of assembly, (2) freedom of association, (3) freedom of speech, and (4) the right to pursue an occupation"-when she investigated and reported charges that resulted in a prosecution by the San Diego City Attorney.  149 F.3d at 961.
>
> Similar to the business operator in *Poppell,* Awabdy does not assert that he has a substantive due process right under the constitution to be free from malicious prosecution. . . . Rather, . . . Awabdy contends that the defendants conspired to deprive him of: (1) his First Amendment free speech rights by unlawfully interfering with his campaign for reelection; (2) his right to equal protection under the Fourteenth Amendment by intentionally causing the District Attorney to bring an unfounded action against him because of racial animus towards Arab Americans; and (3) his Thirteenth Amendment rights by using a criminal prosecution to coerce him into repaying a debt.  We hold that the district court

13

1   erred in ruling, as a matter of law, that First, Thirteenth, and Fourteenth
2   Amendment injuries cannot provide a basis for asserting a malicious prosecution
    claim under § 1983.  We further conclude that, because Awabdy properly alleged
3   that the defendants engaged in malicious conduct with the purpose of depriving
    him of his constitutional rights to free speech and equal protection, he stated a
4   claim for malicious prosecution under § 1983 with respect to the alleged First and
    Fourteenth Amendment violations.

5   Awabdy, 368 F.3d at 1069–70 (footnote omitted).

6       Here, Plaintiff's complaint does not allege that the false charges were made in retaliation

7   or for the purpose of depriving Plaintiff of his constitutional rights.  Instead, Plaintiff's complaint

8   appears to allege that the false charges were filed in retaliation for Plaintiff assaulting another

9   correctional officer.  Assaulting an officer is not constitutionally protected conduct and thus false

10  charges filed in retaliation for that assault does not establish a constitutional violation (again, it is

11  possible that such allegations state a state law claim for malicious prosecution, but they do not

12  state a federal section 1983 claim).

13      These legal standards were not fully set out in the Court's screening order, which upheld a

14  claim for conspiracy.  Accordingly, the Court recommends giving Plaintiff leave to amend his

15  complaint.[5]

16  B.  **Whether Defendants Brannum and Herrera Deprived Plaintiff of a Liberty**

17      **Interest Without Due Process**

18      The second question in evaluating whether Plaintiff states a claim against Defendants

19  Brannum and Herrera for conspiracy to violate his constitutional rights is whether Plaintiff

20  unconstitutionally suffered from the false charges because he was confined to Administrative

21  Segregation and because the false charges were used in his parole hearing before the hearing

22  process on the false charges concluded in his favor.  Again, a plaintiff's rights to due process are

23  violated with a Plaintiff is deprived of a significant liberty interest without due process.  Here,

24  Plaintiff was put into Administrative Segregation and met with the parole board before he

25  received procedural due process on the false charges through the hearing process.  Thus, the

26

27  ────────────────

    [5] Plaintiff should note that although he may be given the opportunity to amend, it is not for the
    purpose of changing the nature of this suit or adding unrelated claims.  George v. Smith, 507 F.3d 605, 607 (7th Cir.
28  2007) (no "buckshot" complaints).

1
2
3

Court must evaluate whether the placement in Administrative Segregation and use of the charges at a parole hearing constituted a significant deprivation of a liberty interest entitling Plaintiff to due process.

4
5
6
7

The U.S. Supreme Court, in determining if disciplinary proceedings resulting in 30 days solitary confinement had to comply with Due Process, provided the following guidance in determining when there is a deprivation of liberty interests such that procedural due process is due in the prison context:

8
9
10
11
12
13
14

States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . .

15
16
17
18
19
20
21
22
23
24
25
26
27

This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, *Wolff, supra,* at 571, n. 19, 94 S.Ct., at 2982, n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976) (assuming without deciding that freedom from punitive segregation for " 'serious misconduct' " implicates a liberty interest, holding only that the prisoner has no right to counsel) (citation omitted), this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests.  We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.  We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation.  Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population.  Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

28

15

Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353–68, 353–69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23–700–33(b) (effective Aug. 1992).  The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record.  Haw.Admin.Rule §§ 23–700–31(a), 23–700–35(c), 23–700–36 (1983).  The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.  The Court rejected a similar claim in *Meachum,* 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

Sandin v. Conner, 515 U.S. 472, 483-87 (1995) (footnotes omitted).

Thus, in Sandin, the U.S. Supreme Court held that neither 30 days solitary confinement nor issuance of an RVR that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural Due Process requirements in that case. Regarding the issue of parole in particular, the Court found that the fact that charges could be used against the prisoner in his parole hearing was not a significant deprivation of his liberty interests because the charges did not inevitably affect his sentence, parole was based on a myriad of considerations, and the prisoner had a chance to explain the circumstances behind his record.

Applying the Sandin holding to this case, Plaintiff's complaint does not establish that he was deprived of a liberty interest without due process because the deprivations he allegedly suffered (i.e. temporary confinement in administrative segregation while disciplinary proceedings were pending and filing of charges that were referred to during his parole hearing) did not deprive him of significant liberty interests such that the prison had to provide him with procedural due process.  Plaintiff's confinement in administrative segregation was not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Moreover, the reference to the false charges in his parole proceeding did not necessarily affect his sentence, were one part of many considerations, and were subject to a hearing where the Plaintiff had an opportunity to explain their circumstances.  Accordingly, Plaintiff's due process rights were not violated by the fact that the administrative segregation and parole proceedings took place before the disciplinary

hearings were concluded.  See Rio v. Schwarzenegger, 2009 WL 1657438, at *7 (C.D. Cal. 2009) (dismissing complaint based on false information in prison file, because "[t]he allegedly 'deceitful' documentation in his file is not of the type that would 'inevitably' lead to the denial of parole.  See Sandin, 515 U.S. at 487, 115 S.Ct. at 2302.  While post-incarceration misconduct is relevant to an inmate's suitability for parole, it is only one of the factors the parole board must consider.  Cal.Code Regs. tit. 15, § 2402.  Moreover, plaintiff will have the opportunity to explain the precise nature of his disciplinary conviction at his parole suitability hearing."); Ellington v. Director of Corrections, 2009 WL 900168, at *5 (E.D. Cal. 2009) ("Liberty interests created by prison regulations are limited to freedom from restraint which 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal non-adversary review of the evidence justifying the decision to place the prisoner in administrative segregation.  After placement in administrative segregation, a prisoner must have his placement periodically reviewed by prison officials. Plaintiff fails to allege that he was placed in administrative segregation in violation of this requirement.  Plaintiff thus fails to state a cognizable due process claim under section 1983 against defendant Lieutenant Perez.") (internal citations omitted).

That said, if Plaintiff's parole were truly denied solely because of false charges, Plaintiff may have a constitutional claim, but that claim would be proper as a *habeas corpus* petition—not section 1983, because it challenges the legality of his confinement.  Elliott v. U.S., 572 F.2d 238, 239 (9th Cir. 1978) ("If Elliott desires to challenge the Parole Board's reliance upon inaccurate information, he should make his claim in a petition for a writ of habeas corpus, 28 U.S.C. ss 2242 and 2243.");  Edwards v. Marshall, 2006 WL 845645, at *3, report and recommendation adopted (E.D. Cal., July 24, 2006, No. CVF036233AWIWMWHC) 2006 WL 2065400, aff'd (9th Cir. 2011) 442 Fed.Appx. 258 (evaluating denial of parole claim based on false information brought by habeas corpus petition).

\\\

\\\

17

1   **VII.   ANALYSIS OF PLAINTIFF'S CLAIM AGAINST DEFENDANT CASTRO**
2   **FOR VIOLATION OF DUE PROCESS**

3   The second claim that the Court upheld during screening was a claim against Defendant

4   Castro for violation of due process.  Plaintiff alleges that Defendant Castro issued a false RVR

5   against Plaintiff.  Plaintiff also seems to allege that Defendant Castro violated his due process

6   rights when she denied his inmate staff complaint/inmate appeal, which was filed in regards to the

7   incident on March 4, 2009, before Plaintiff was formally charged with the RVR for battery on a

8   police officer (ECF No. 24, pgs. 6-7).  Defendant Castro found that "the officer" and defendant

9   Brannum did nothing wrong.  Plaintiff alleges that, during her investigation of Plaintiff's

10  grievance against Brannum, Defendant Castro failed to interview a witness, failed to check

11  Plaintiff's medical records, and failed to talk to Sgt. A. Day.  Based on the facts alleged in the

12  first amended complaint it appears that Defendant Castro was not involved in investigating the

13  RVR against Plaintiff for battery on a peace officer.

14  Defendant Castro argues that the claim against her should be dismissed because there is

15  no constitutional protection against false charges, because Defendant Castro has qualified

16  immunity for issuing the RVR, and because Plaintiff received all of the due process to which he

17  was entitled.  (ECF No. 32-1, p. 9).

18  Plaintiff argues that Defendant Castro violated his procedural due process rights and his

19  substantive due process rights, and that she is not entitled to qualified immunity.  (ECF No. 108-

20  15).

21  **A.  Legal Standard**

22  As discussed above, the Due Process Clause protects against the deprivation of liberty

23  without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393

24  (2005).  In order to invoke the protection of the Due Process Clause, a plaintiff must first

25  establish the existence of a liberty interest for which the protection is sought.  Id.  Liberty

26  interests may arise from the Due Process Clause itself or from state law.  Id.  The Due Process

27  Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of

28  confinement."  Id.

18

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.  As long as the five minimum Wolff requirements are met, due process has been satisfied.  Brown v. McCormick, 89 F.3d 844 (9th Cir. 1996).  Some evidence must support the decision of the hearing officer.  Superintendent v. Hill, 472 U.S. 445, 455 (1985)

B. **Analysis**

As to Plaintiff's claim regarding the allegedly false RVR issued by Defendant Castro, as analyzed above, Defendant Castro's issuance of a false charge against Plaintiff does not by itself state a violation of Plaintiff's constitutional rights.  A plaintiff must allege that the false charges were brought in order to deprive the plaintiff of a constitutional right.  Here, there are no such allegations.

In fact, based on the facts alleged in the complaint, the false RVR seems to have been issued based on a misunderstanding.  Defendant Castro asked an inmate who signed a declaration supporting Plaintiff's story what knowledge he had of Plaintiff, but apparently used a name for Plaintiff that the inmate did not know.  Because the name was unfamiliar to the inmate, he said he had no knowledge of Plaintiff.  Based on that, Defendant Castro apparently thought Plaintiff falsified the declaration, and so issued the RVR for falsification of records or documents.  There is no allegation or indication that this was done with the intent to deprive Plaintiff of a constitutional right.

As to the required procedural due process, it appears that Plaintiff received procedural due process in the adjudication of the RVR for falsification of documents.  There are no allegations in the first amended complaint that Plaintiff was not provided the procedural protections required by Wolff.  Additionally, according to Plaintiff, he had a hearing on the RVR before Senior Hearing Officer Lt. Wilson, and was exonerated.  (ECF No. 24, p. 9).  Accordingly, Plaintiff does not have a procedural due process claim against Defendant Castro for issuing the RVR, even if it was false.

As to the claim that Defendant Castro failed to interview a witness, failed to check Plaintiff's medical records, and failed to talk to Sgt. A. Day in regards to Plaintiff's separate staff complaint/inmate appeal against Castro, this too does not state a claim for violation of Plaintiff's constitutional rights.   The procedures involved here concern Plaintiff's grievance against an officer and would not result in a loss of any liberty interest by Plaintiff.  As discussed in the law cited above, there is no due process required in processing a prison grievance because there is no chance of depriving Plaintiff of a protected liberty interest.   Accordingly, even if defendant Castro failed to thoroughly investigate Plaintiff's staff complaint/inmate appeal, she did not violate Plaintiff's due process rights.

Plaintiff is mistaken in his reliance on Alexander v. Perrill, 916 F.2d 1392, 1397 (9th Cir. 1990).  Alexander dealt with the duty to investigate a prisoner's claim that his sentence was miscalculated, not the duty to investigate a prisoner's staff complaint.  Id. at 1397.  In other words, Alexander dealt with process due when a prisoner's sentence is at issue, which does concern his liberty, whereas here the grievance procedure did not concern Plaintiff's sentence or

1   other liberty interest.

2       Plaintiff also alleges that Defendant Castro somehow deprived Plaintiff of his due process

3   right to a fair and impartial investigation with respect to the criminal charges against him, and

4   effectively denied Plaintiff an opportunity to be heard.  (ECF No. 46, p. 112).  However, based on

5   the facts in the first amended complaint, Defendant Castro was only was involved in investigating

6   Plaintiff's staff complaint/inmate appeal.  (ECF No. 24, pgs. 7-8).  She appears to have had no

7   responsibility for anything related to the criminal case against Plaintiff for battery on a non-

8   inmate.  Moreover, it appears that Plaintiff was exonerated for the criminal charges, and thus can

9   only state a constitutional claim if the false charges were done in retaliation for Plaintiff

10  exercising constitutional rights.

11      Both Plaintiff and Defendant Castro discuss Plaintiff's parole hearing.  As analyzed

12  above, Plaintiff's due process rights were not violated by the fact that the administrative

13  segregation and parole proceedings took place before the disciplinary hearings were concluded

14  because the false charges were just one part of a process, which included the ability for Plaintiff

15  to explain those charges (again, if Plaintiff alleges that the false charges were solely responsible

16  for him losing parole, he could have a constitutional claim, but it would be a petition for habeas

17  corpus).

18      Therefore, based on the foregoing, the Court recommends that the claim against

19  Defendant Castro for violation of Plaintiff's due process rights be dismissed, with leave to amend.

20      Because the Court has found that Plaintiff has failed to state a claim against Defendant

21  Castro, the Court need not address the issue of qualified immunity.

22  **IV.    CONCLUSION AND RECOMMENDATIONS**

23      The Court finds that Defendants Herrera and Castro's motion to dismiss should be

24  granted, and that Defendant Brannum's motion to dismiss should be granted.  The claim for

25  conspiracy against defendants Herrera and Brannum and the claim for violation of due process

26  against Defendant Castro should be dismissed.

27      The Court recommends giving Plaintiff leave to amend his complaint to the extent he

28  believes he can assert factual allegations that any defendant filed false charges against Plaintiff in

21

1  order to deprive him of constitutional rights, such as in retaliation for exercising such rights, as

2  discussed above.

3       Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

4       1) Defendant Herrera and Castro's motion to dismiss be GRANTED, with leave to

5          amend within thirty days from the issuance of the order from the District Court on

6          these findings and recommendations; and

7       2) Defendant Brannum's motion to dismiss should be GRANTED, with leave to

8          amend within thirty days from the issuance of the order from the District Court on

9          these findings and recommendations.

10      These Findings and Recommendations will be submitted to the United States District

11  Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1).  Within

12  **thirty (30) days** after being served with a copy of these Findings and Recommendations, any

13  party may file written objections with the court and serve a copy on all parties.  Such a document

14  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any

15  reply to the objections shall be served and filed within **ten (10) days** after service of the

16  objections.  The parties are advised that failure to file objections within the specified time may

17  result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014)

18  (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19      Further, it is ORDERED that defendant Brannum's motion to strike Plaintiff's

20  clarification and objection to defendant Brannum's reply in support of defendant Brannum's

21  motion to dismiss is GRANTED and Plaintiff's "clarification and objection" (ECF No. 56) is

22  STRICKEN from the record.

23      It is further ORDERED that defendants Castro and Herrera's request for judicial notice

24  (ECF No. 32-2) is DENIED.
    IT IS SO ORDERED.

25

26  Dated:   __December 27, 2016__        /s/ _Erica P. Groje_

27                                        UNITED STATES MAGISTRATE JUDGE

28

                                    22