# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD RANSOM, JR.,<br><br>    Plaintiff,<br><br>v.<br><br>DANNY HERRERA, et al.,<br><br>    Defendants. | 1:11-cv-01709-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THE CASE PROCEED AGAINST DEFENDANTS BRANNUM AND HERRERA ON A FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM, A FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM UNDER DEVEREAUX, A RETALIATION CLAIM, A SECTION 1983 MALICIOUS PROSECUTION CLAIM, AND A CONSPIRACY CLAIM, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED WITH PREJUDICE<br><br>(ECF NO. 72)<br><br>TWENTY DAY DEADLINE |

    Leonard Ransom, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed a Second Amended Complaint ("SAC") on May 15, 2017, which is before this Court for screening. (ECF No. 72).

    Plaintiff alleges that Defendants conspired to violate his constitutional rights by filing a knowingly false report against Plaintiff, falsely accusing Plaintiff of a staff assault. This report formed the basis of a criminal prosecution as well. As described below, Plaintiff's earlier complaint in this case was allowed to proceed past screening, but was then dismissed with leave to amend based on Defendants' motion to dismiss arguing that merely filing false accusations, without more, does not state a violation of constitutional rights. As described below, Plaintiff's Second Amended Complaint contains additional facts alleging that the false report and criminal prosecution were done in retaliation for Plaintiff's exercise of his Fifth Amendment rights. Moreover, Plaintiff describes consequences including prolonged

1

Administrative Segregation without a bed that may rise to the level of an atypical and significant hardship resulting from the false report, even though Plaintiff was eventually exonerated. Thus, construing these allegations in favor of Defendant, the Court recommends allowing the Second Amended Complaint to proceed against Defendants Brannum and Herrera only on a Fourteenth Amendment procedural due process claim, a Fourteenth Amendment substantive due process claim under Devereaux, a retaliation claim, a section 1983 malicious prosecution claim, and a conspiracy claim

## I. PROCEDURAL BACKGROUND

Leonard Ransom, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on October 13, 2011. (ECF No. 1). On August 12, 2014, the Court[1] screened Plaintiff's complaint and found that it stated claims against Sergeant Ricky Brannum and Correctional Officer Danny Herrera for conspiracy, and against defendant Lieutenant L. Castro for violation of due process. (ECF No. 9). Specifically, the Court found regarding the conspiracy claim that "Plaintiff has alleged facts, if true, state a claim for relief against Defendants Brannum and Herrera on his conspiracy claim. The facts alleged indicate that Brannum, in the presence of Herrera and Plaintiff, stated his intention to falsely charge Plaintiff with staff assault. Plaintiff alleges that Herrera falsely accused him, and that Plaintiff was exonerated based upon false testimony of Herrera." (ECF No. 9, at p. 6). Regarding the Due Process claim, the Court found "Here, Plaintiff has alleged facts indicating that he was charged with a disciplinary violation, and that he was falsely accused. Plaintiff was exonerated based in part on a finding that a correctional officer gave false testimony. Plaintiff also alleges that there was a specific finding that his due process rights had been violated, and that the pending disciplinary charged was responsible in part of his finding of unsuitability for parole. Plaintiff has therefore stated a colorable claim for relief against Lt. Castro for a Due Process violation." (Id. at p. 7).

Plaintiff initially agreed to stand on his original complaint (ECF No. 15), and the Court

---

[1] Magistrate Judge Gary S. Austin was the magistrate judge assigned to this case until October 13, 2015. (ECF No. 25).

authorized service of that Complaint. (ECF No. 16). However, Plaintiff then asked to correct two errors in his Complaint: changing defendant Castro's first initial from L. to J., and replacing the date "4/5/09" in paragraph 24 of the Complaint to "5/5/09." (ECF No. 20). The Court denied this request and gave Plaintiff leave to amend his Complaint to make these changes. (ECF No. 22).

On January 23, 2015, Plaintiff filed his First Amended Complaint. (ECF No. 24). The Court found cognizable claims (ECF No. 27, p. 2), and ordered that the case proceed "against defendants Sergeant Ricky Brannum and Correctional Officer Danny Herrera for conspiracy, and against defendant Lieutenant J. Castro for violation of due process." (Id. at 4).

On June 7, 2016, Defendants Castro and Herrera filed a motion to dismiss. (ECF No. 32). On July 7, 2016, defendant Brannum filed a motion to dismiss. (ECF No. 38). Defendants Brannum and Herrera argued that the claim against them should be dismissed because "a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983." (ECF No. 32-1, p. 6; ECF No. 38-1, p. 6). The gravamen of the motions to dismiss was that merely filing false disciplinary charges, without more, does not state a claim for violation of constitutional rights. (ECF No. 32-1, p. 6; ECF No. 38-1, p. 6) (Plaintiff "has no constitutional right to be free from receiving false disciplinary charges."). Defendants also argued that the filing of false disciplinary charges does not violate Plaintiff's due process rights so long as Plaintiff receives all the process that is due. (ECF No. 32-1, p. 7).

On December 28, 2016, the Court issued findings and recommendations, recommending that both motions to dismiss be granted, and that Plaintiff be given leave to amend. (ECF No. 61). The Court thoroughly examined the applicable law and agreed that the mere filing of false disciplinary charges does not state a constitutional claim, but described how there could be a constitutional violation if the filing of false charges resulted in the deprivation of a liberty interest, or if the charges were filed in order to penalize Plaintiff for exercising his constitutional rights:

> In order to state a claim for a violation of due process, Plaintiff must allege that he was deprived of a liberty interest without Due Process. Here, Plaintiff was

exonerated of the charges and not subjected to additional punishment as a result of the charges. Although he was placed in Administrative Segregation and the false charges were referenced in his parole hearing, these deprivations do not amount to a loss of a constitutionally protected liberty interest such that Plaintiff was entitled to procedural due process. Additionally, the mere filing of false disciplinary charges does not violate due process; rather it entitles a plaintiff to procedures to resolve the charges. If charges are filed in order to penalize Plaintiff for his exercise of constitutional rights, such a situation could be a violation of constitutional rights.

(ECF No. 61). Chief Judge Lawrence J. O'Neill adopted the findings and recommendations in full, over the objections of Defendants as to the leave to amend. (ECF No. 69).

On May 15, 2017, Plaintiff filed his Second Amended Complaint. (ECF No. 72). On May 31, 2017, Defendants filed a request for screening of the Second Amended Complaint (ECF No. 73), which was granted (ECF No. 74).

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d

677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that on March 4, 2009, while he was incarcerated in Kern Valley State Prison, Correctional Officer Herrera and Correctional Sergeant Brannum approached Plaintiff's cell in order to transport Plaintiff to "an alleged 'outside medical transport.'"  As they approached Plaintiff's cell, Plaintiff heard Herrera say to Brannum that "this is the one with the staff assault."

Herrera knew Plaintiff was the one with the staff assault because, approximately ten days prior, Herrera was involved in transporting Plaintiff to a court proceeding.  During the transport, Herrera continued to ask Plaintiff about his criminal case, in an effort to elicit an incriminating statement.  Plaintiff told Herrera not to ask Plaintiff about his case, and that if Herrera wanted to know, Herrera could talk to Plaintiff's attorney.  Plaintiff also told Herrera that Herrera knew anyway, because it was on the paperwork.  This appeared to enrage Herrera.  When Plaintiff's counsel arrived, Plaintiff spoke with him about Herrera.

On the trip back from court Herrera was hostile to Plaintiff, and periodically glared back at Plaintiff.  Herrera also "turned the rear speakers up, full bore, as to where the decibal [sic] level caused pain in [Plaintiff's] ears, and aggravated [his] migraine headache."

This incident shook Plaintiff, because he knew that Herrera was a friend of one of the officers that Plaintiff was accused of assaulting.

Once Herrera and Brannum arrived at Plaintiff's cell on March 4, 2009, Plaintiff began to strip, as required by policy.  Herrera became verbally abusive, and kept ordered Plaintiff to squat "all the way down," even though Herrera knew Plaintiff had a bad disk in his back because Plaintiff told him on the day that Herrera transported Plaintiff to Plaintiff's court proceeding.

When Herrera and Brannum continued their verbal assault, Plaintiff stated "you know I got a bad disk in my back, and can't go all the way down." Plaintiff then snatched his shirt from the tray slot, and told both of them to get away from his door and that he was not going. Brannum then stated "I'll say you assaulted my officer." Plaintiff then told Brannum "to get his Nazi ass away from my door, and take Herrera's greasy ass with!"

Herrera then put Plaintiff's shoes, socks, and boxers in the tray slot, closed it, locked it, and then walked away with Brannum, laughing.

Approximately fifteen minutes later, a sergeant notified Plaintiff that he was being accused of assaulting Herrera by allegedly grabbing Herrera through the tray slot. Plaintiff was then examined by a nurse in order to complete a Medical Report of Injury or Unusual Occurrence (California Department of Corrections and Rehabilitation ("CDCR") Form 7219).

Upon Plaintiff's return to his cell, he discussed the incident with two other inmates. Both inmates told Plaintiff what they observed and heard, and that they would be witnesses. Both inmates provided declarations under penalty of perjury. One of the inmates (inmate Johnson), who did not know Plaintiff by the name of Ransom, referred to Plaintiff in the declaration as "Occupant." The same day, Plaintiff filed a staff complaint/inmate appeal regarding the incident.

On March 5, 2009, Plaintiff wrote to his attorney regarding the incident. Plaintiff requested immediate help, and asked his attorney to seek a protective order, because "this type of violation … effects [Plaintiff's] current case…."

On March 17, 2009, Plaintiff was charged (by a Rules Violation Report ("RVR")) with battery on a peace officer. The underlying conduct, alleged by Herrera, was that Plaintiff reached his right arm through the tray slot and grabbed Herrera's wrist and forearm in an attempt to gain control of Plaintiff's clothing that Herrera was holding. Plaintiff was informed that the RVR would be referred to the Kern County District Attorney's Office for possible criminal prosecution.

In Brannum's crime report, Brannum alleged the same conduct as that in the RVR. In Herrera's 7219, Herrera stated: "I/M attempt to pull arm through (tray) port," and R.N. Allen Davis stated that she saw an "area of [r]ed" and that there was "a tender spot above the elbow."

On March 30, 2009, the incident packet, which included the RVR and the 7219, along with a declaration of probable cause based on the crime reports (that included false statements from Brannum and Herrera) and a formal request for felony charges, was submitted to the Kern County District Attorney's Office.

On May 5, 2009, Correctional Lieutenant Castro interviewed Plaintiff regarding his appeal/staff complaint. Plaintiff advised Castro that he had declarations from two witnesses to the incident. Castro asked Plaintiff for the declarations, and he provided her with copies.

Approximately two weeks later, Plaintiff was served with another RVR, charging Plaintiff with falsification of records or documents for submitting a false declaration. The second RVR was based on Castro's interview of one of Plaintiff's witnesses, inmate Johnson. When Castro asked Johnson "[w]hat knowledge do you have of Ransom?", Johnson indicated that he did not know anyone by that name. Castro did not interview Plaintiff's other witness. Plaintiff believes this was done in order to thwart the investigation.

Around that same time, Correctional Counselor Garza was preparing a Life Prisoner Evaluation for the Board of Parole Hearings, which Plaintiff was scheduled to appear before on June 9, 2009. The report contained the allegations of battery on a peace officer and falsification of records or documents.

On or about May 20, 2009, Plaintiff received a response to his appeal/staff complaint, wherein it was found that staff did not violate CDCR policy.

On June 1, 2009, Plaintiff submitted an appeal/staff complaint on Castro for filing a false report and lying on an official document, which was screened out and not processed.

On June 9, 2009, Plaintiff appeared before the Board of Parole Hearing to determine his suitability for parole. Both RVRs were considered by the hearing panel, and were used, in large part, to deny Plaintiff parole and put off his next parole hearing for 10 years.

On June 12, 2009, Plaintiff was exonerated on the falsification of records charge. Plaintiff was exonerated based on an investigation that had been done by Correctional Officer Chavez, which was known to Castro before Plaintiff appeared before the Board of Parole Hearing and before the Third Level Review was concluded, but Castro did nothing.

On June 29, 2009, Plaintiff sent a letter to M.D. Biter regarding his appeals on Castro being screened out, and the fact that she erroneously denied Plaintiff's appeal/staff complaint and would not respond to Plaintiff's request for interviews. Castro intercepted this letter, and responded on behalf of M.D. Biter, stating that "[n]o further correspondence from this office will be forthcoming regarding this issue."

On August 14, 2009, the Kern County District Attorney's Office accepted the case regarding battery on a peace officer for prosecution, based on the false declaration of probable cause and false criminal reports. Plaintiff was charged with five felonies, with a potential exposure of fifty years to life.

On January 5, 2010, Plaintiff was transferred to North Kern State Prison. On June 10, 2010, Plaintiff was transferred to CCI-IV-A, where he immediately got a job, began positive programming, and had no disciplinary infractions.

On February 11, 2011, CCI-IV-A began the transition from a General Population housing unit to a Security Housing Unit. Prisoners were transferred en masse to other prisons, but Plaintiff was not. On March 29, 2011, Plaintiff, along with 19 other inmates remaining in CCI-IV-A, had their property inventoried and taken, and were placed in Administrative Segregation pending transfer. Within 90 days of placement, all inmates that had been placed in Administrative Segregation with Plaintiff were transferred out. Plaintiff was not transferred out.

On July 22, 2011, Plaintiff was found not guilty of the RVR for battery on a police officer, based on the false assertions of Herrera, the photocopy of the cell configuration, and the due process violation that could not be corrected at CCI.

On August 3, 2011, Plaintiff was retained in Administrative Segregation, in violation of policy. Plaintiff's cell had no furnishings and he was forced to sleep on the floor.

Additionally, Plaintiff was not given grief counseling, even though his parents had died.

When the false criminal charges were alleged by Herrera and Brannum, there was another criminal proceeding against Plaintiff for staff assault. Plaintiff had a viable defense to the charges, but once accused of the false charges, he had to defend against those as well, which interfered with the defense of the original charges, and "infected any negotiating position…" Plaintiff had.

As to his injury, Plaintiff states that he was subject to pretextual criminal charges, had his liberty unlawfully restrained (or his potential to gain liberty chilled), that he spent an unconscionable period in administrative segregation, and that the false information is still in his Central File. Plaintiff also alleges that he suffers from agoraphobia, paranoia, claustrophobia, anxiety, depression, insomnia, and high blood pressure.

Plaintiff attached approximately 80 pages of exhibits to his Second Amended Complaint.

### IV. ANALYSIS

#### A. Claims against Defendant Castro

To begin, the Court finds that Plaintiff has failed to state any claim against defendant Castro. Plaintiff has not alleged any facts that would show that defendant Castro was part of any conspiracy, and has alleged no facts that would sufficiently connect defendant Castro to defendants Herrera and Brannum. Plaintiff does allege that defendant Castro thwarted the investigation into Herrera and Brannum, but that allegation, even if true, is not enough to show that she was part of a conspiracy to subject Plaintiff to RVR charges and criminal charges on the basis of false evidence.

Additionally, while Plaintiff left out some facts in his Second Amended Complaint that were included in the First Amended Complaint, it still appears that the RVR that defendant Castro issued was based on a misunderstanding. The allegation that defendant Castro did not correct her mistake immediately after it was discovered is not enough to state a cognizable section 1983 claim against defendant Castro. Accordingly, even taking all of Plaintiff's allegations as true and construing Plaintiff's pleadings liberally, the Court finds that Plaintiff

has failed to state a cognizable claim against defendant Castro.

### B. Claims Against Defendants Brannum and Herrera

Again, as to defendants Brannum and Herrera, the Court previously recommended dismissing Plaintiff's claims against them because Plaintiff failed to allege that he was "deprived of a liberty interest without due process because the deprivations he allegedly suffered (i.e. temporary confinement in administrative segregation while disciplinary proceedings were pending and filing of charges that were referred to during his parole hearing) did not deprive him of significant liberty interests such that the prison had to provide him with procedural due process. Plaintiff's confinement in administrative segregation was not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Moreover, the reference to the false charges in his parole proceeding did not necessarily affect his sentence, were one part of many considerations, and were subject to a hearing where the Plaintiff had an opportunity to explain their circumstances." (ECF No. 61, p. 16). Additionally, Plaintiff failed to allege that the false RVRs he received were made in retaliation for the exercise of a constitutional right or for the purpose of depriving Plaintiff of his constitutional rights. (Id. at 14). Plaintiff's amended complaint makes additional allegations regarding the reasons for and consequences of the false charges that, construed in his favor, state violations of his constitutional rights.

### 1. Procedural and Substantive Due Process

Plaintiff has also now sufficiently alleged a Fourteenth Amendment procedural due process claim against defendants Brannum and Herrera because Plaintiff has alleged that he was denied a liberty interest even though the charges were ultimately not sustained. Plaintiff alleges that he was placed in Administrative Segregation for more than 90 days "in a cell, with no furnishings, and forced to sleep on the floor, given no grief counseling, and tortured daily by the treatment" as a result of the false accusations. Indeed, he alleges that he remained in Ad-Seg even after found not guilty because of the false accusations. (ECF No. 72, at p. 10). Plaintiff also alleges that the accusation "was used, in large part, to deny parole and put off my next parole hearing, for ten (10) years." Taken together, and construed in Plaintiff's favor,

these conditions could rise to the level of deprived of a significant liberty interest because they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 484 (1995).[2]

In a like manner, Plaintiff has asserted facts supporting a deprivation of substantive due process under Devreaux. Devereaux v. Abbey, 263 F.3d 1070, 1074–75 (9th Cir. 2001). ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); Constanich v. Dept. of Social and Health Services, 627 F.3d 1101, 1111 (9th Cir. 2010).

## 2. Retaliation, Malicious Prosecution and Conspiracy

Moreover, Plaintiff has now alleged that the RVR of battery on a peace officer (as well the filing of false criminal charges, and turning up the speakers in a car to an extent that caused Plaintiff pain) were done in retaliation for Plaintiff exercising his First and Fifth Amendment rights to remain silent. There are five basic elements to a First Amendment retaliation claim: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005). However, retaliation claims are not limited to the First Amendment. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his *constitutional rights* and that the retaliatory action does not advance legitimate penological goals, such as preserving

---

[2] The Court again notes that Sandin v. Conner, 515 U.S. 472, 483-87 (1995), found that deprivations that included limited solitary confinement and use at a parole hearing did not amount to deprivations of a significant liberty interest, as discussed in the Court's prior order. (ECF No. 61, p. 16). The Court finds that Plaintiff's allegations in the Second Amended Complaint are more serious than those in Sandin in that the duration spent in Administrative Segregation time is longer, the duration was greater than other inmates at the prison spent in Administrative Segregation who did not have charges against them, and the conditions within Administrative Segregation were harsher (including no bed). Additionally, Plaintiff alleges that his parole hearing was put off for 10 years on the basis of the false RVR allegations. The Court is not reaching a conclusion as to whether any of these deprivations in isolation would be sufficient to state a claim, and recognizes the hurdles in particular to showing a deprivation of a liberty interest based on the use of false reports in a parole hearing. The Court is not precluding a motion for summary judgment that the facts fail to establish a sufficient deprivation under the law. The Court is only finding that the allegations that the Plaintiff suffered a deprivation of a liberty interest as a result of the false charges are sufficient to proceed with the case past the screening stage.

institutional order and discipline. *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985)." <u>Barnett v. Centoni</u>, 31 F.3d 813, 815–16 (9th Cir. 1994) (emphasis added). Exercising the Fifth Amendment right against self-incrimination can be protected conduct. <u>Bridges v. Hubbard</u>, No. CIV S-09-0940 TLN, 2013 WL 3773886, at *9 (E.D. Cal. July 17, 2013), <u>report and recommendation adopted</u>, No. 2:09-CV-0940 TLN DAD, 2013 WL 5230239 (E.D. Cal. Sept. 16, 2013) (finding "that plaintiff was engaged in 'protected conduct' for purposes of a retaliation claim when he exercised both his First Amendment right not to speak in response to defendant Davey's questions and his Fifth Amendment right against self-incrimination.").

Plaintiff has alleged that the false charges were brought in retaliation for exercise of his Fifth Amendment right to remain silent. (ECF No. 72, p. 4). Plaintiff alleges that "When I told C.O. Herrera 'not to ask me about my case, and if he wanted to know, ask the attorney of record, as I do not talk to police' . . . [this] appeared to enrage him, specifically, that I would not discuss my criminal case with him, and allow him to elicit any statement from me." (<u>Id.</u> at p. 5). Construing the facts in favor of Plaintiff, the Court finds that Plaintiff has stated a cognizable retaliation claim against defendants Brannum and Herrera.

Plaintiff's allegations also support a claim for malicious prosecution against defendants Brannum and Herrera. "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right. Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal question marks and citations omitted) (alterations in original).

The Ninth Circuit has also explained that, "[i]n this circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. However, an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of

12

constitutional rights." Usher v. City of Los Angeles, 828 F.2d 556, 561–62 (9th Cir. 1987) (internal quotation marks and citations omitted). Plaintiff alleges that defendants Brannum and Herrera fabricated evidence that was sent to prosecutors as part of a "Formal Request for Felony Charges, requesting (approx.) eight different charges including five felonies…," and that the evidence was fabricated in order to deprive Plaintiff of his Fifth Amendment constitutional right.

Similarly, Plaintiff has alleged a conspiracy claim, as was initially found in the prior screening orders, because Plaintiff has now alleged a conspiracy between defendants Herrera and Brannum to deprive Plaintiff of his constitutional rights by filing false charges against him.

In sum, Plaintiff's SAC does not merely allege that Defendants Herrera and Brannum filed false charges against him, which were dismissed following due process. Plaintiff has alleged that they were filed in retaliation for his exercise of his Fifth Amendment rights, and that false evidence was maliciously used to bring very serious criminal proceedings against him, which all resulted in his deprivation of a liberty interest even though he was found not guilty of the false RVRs and the false criminal charges. While the evidence may ultimately refute these allegations—both the interconnectedness of Plaintiff's failure to respond to questioning and the allegedly false charges, and of the consequences of the allegedly false charges—the Court recommends holding that Plaintiff has alleged constitutional violations that should proceed past the screening stage.

## V. CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's Second Amended Complaint states the following cognizable claims against defendants Brannum and Herrera: a Fourteenth Amendment procedural due process claim, a Fourteenth Amendment substantive due process claim under Devereaux, a retaliation claim, a section 1983 malicious prosecution claim, and a conspiracy claim. The Court also finds that Plaintiff has failed to state any other cognizable claims.

The Court will not recommend permitting further leave to amend. This is Plaintiff's third complaint, and the Court has given Plaintiff ample legal guidance. Given the multiple amendments and the legal guidance that was provided, the Court finds that further amendment

would be futile.

Therefore, IT IS HEREBY RECOMMENDED that this case proceed against defendants Brannum and Herrera on Plaintiff's Fourteenth Amendment procedural due process claim, Fourteenth Amendment substantive due process claim under Devereaux, retaliation claim, section 1983 malicious prosecution claim, and conspiracy claim, and that all other claims and defendants be dismissed with prejudice.

These findings and recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **twenty (20) days** after being served with a copy of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 30, 2017**          /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE