UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LEONARD RANSOM, JR.,

      Plaintiff,

  v.

DANNY HERRERA and RICKY BRANNUM,

     Defendants.

Case No. 1:11-cv-01709-LJO-EPG (PC)

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE BE DENIED, THAT PLAINTIFF'S MOTION TO STRIKE THE AMENDED DECLARATION OF B. FEINBERG BE DENIED, THAT PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT BE DENIED, AND THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART

(ECF NOS. 206, 223, 228, & 235)

OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS

ORDER GRANTING PLAINTIFF'S APPLICATION TO EXCEED PAGE LIMITS

(ECF NO. 234)

## I.    BACKGROUND

Leonard Ransom, Jr. ("Plaintiff"), is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. "This action now proceeds on Plaintiff's Second Amended Complaint (ECF No. 72), against defendants Brannum and Herrera on Plaintiff's Fourteenth Amendment procedural due process claim, Fourteenth Amendment substantive due process claim under <u>Devereaux</u>, retaliation claim, section 1983 malicious prosecution claim, and conspiracy claim." (ECF No. 77, p. 2).

On December 10, 2018, Defendants filed a motion for summary judgment. (ECF No. 223). On December 11, 2018, Defendants filed an amended declaration of B. Feinberg, MD, in support of their motion for summary judgment. (ECF No. 224). On February 21, 2019, Plaintiff filed his opposition to the motion for summary judgment and cross-motion for summary judgment (ECF No. 235), his response to Defendants' separate statement of undisputed facts (ECF No. 233), and an application requesting that his opposition be allowed to exceed the page limits (ECF No. 234).[1] On March 22, 2019, Defendants filed their reply, their response in support of their separate statement of undisputed facts, and objections to Plaintiff's evidence. (ECF No. 238).

Defendants' motion for summary judgment is now before the Court, as is Plaintiff's cross-motion for summary judgment, Plaintiff's request for judicial notice (ECF No. 206) and Plaintiff's motion to strike the amended declaration of B. Feinberg, MD (ECF No. 228). For the reasons that follow, the Court will recommend that Plaintiff's cross-motion for summary judgment, request for judicial notice, and motion to strike be denied. The Court will also recommend that Defendants' motion for summary judgment be granted in part and denied in part.

## II.     BACKGROUND

### a.   Summary of Plaintiff's Claims

Plaintiff alleges that on March 4, 2009, Defendants approached Plaintiff's cell in order to transport Plaintiff to a medical appointment. Defendants were verbally abusive, and told Defendants that he was not going to go. Defendant Brannum then told Plaintiff that he would say that Plaintiff assaulted his officer. Plaintiff was then charged with an RVR for battery on a peace officer, and later received criminal charges based on the same false allegations. Plaintiff alleges that Defendants conspired to give him the false charges because he refused to implicate himself in a prior criminal case based on an alleged staff assault.

\\\

---

[1] The Court finds good cause to grant Plaintiff's application to exceed page limits. Accordingly, IT IS ORDERED that Plaintiff's application to exceed page limits (ECF No. 234) is GRANTED.

The criminal charges based on the 2009 incident were dropped in September of 2010, and on July 22, 2011, Plaintiff was found not guilty of the RVR based on the 2009 incident. However, Plaintiff was subjected to a prolonged period in administrative segregation prior to the resolution of the RVR, and had to defend against the false criminal charges.

     b.   Relevant Background Facts

The facts below are either undisputed, or are facts that Plaintiff supported with admissible evidence.[2]

Plaintiff received a Rules Violation Report ("RVR") for battery on a peace officer based on an earlier incident that occurred on May 22, 2007. Separate Statement of Undisputed Facts ("SSUF") 1.[3] "The Kern County District Attorney's Office elected to prosecute Plaintiff based on the events of May 22, 2007." (ECF No. 223-2, p. 9). Plaintiff was placed in administrative segregation at Kern Valley State Prison on May 22, 2007. SSUF 2.

On March 4, 2009, Plaintiff was at Kern Valley State Prison in administrative segregation. SSUF 4. What occurred on this date is disputed. Defendants contend, and presented evidence, that Plaintiff grabbed defendant Herrera. (ECF No. 223-4, p. 2, ¶ 5). Plaintiff contends, and presented evidence, that "[a]t no time did [he] touch, grab, or in any way, batter Defendant Herrera, or take any clothing from his person, on March 4, 2009, as alleged by Defendant Herrera, or Brannum." (ECF No. 235, p. 5, ¶ 15). Additionally, Plaintiff presented evidence that, as defendant Herrera was walking away from him, defendant Brannum stated "I'll say you assaulted my officer…." (Id. at ¶ 17).

On that same day, Plaintiff was charged with battery on a peace officer. SSUF 5.[4] Additionally, on August 3, 2009, Plaintiff was criminally charged based on the allegation that he assaulted defendant Herrera. (ECF No. 223-13, pgs. 52-55)

---

[2] As described below, in the context of a summary judgment motion, the evidence of the non-movant (Plaintiff) is to be believed, and all reasonable inferences must be drawn in his favor.

[3] While Plaintiff states that he contests this fact, it appears that he only contests it based on the date he received the RVR. He does not appear to contest that he received an RVR for battery on a peace officer based on an incident that occurred on May 22, 2007.

[4] While Plaintiff states that he contests this fact, it appears that he only contests it based on the date he received the RVR. He does not appear to contest that he received an RVR for battery on a peace officer based on an incident that occurred on March 4, 2009.

Plaintiff agreed to plead no contest to Count 1 of the criminal charges based on the 2007 incident in exchange for dismissal of the other charges based on the 2007 incident, as well as dismissal of the charges based on the 2009 incident. SSUF 22. Plaintiff entered his plea sometime in September of 2010. (ECF No. 235, p. 29; SSUF 21).

Plaintiff was transferred to North Kern State Prison on January 5, 2010. SSUF 17. Plaintiff was transferred from North Kern State Prison to California Correctional Institution on June 10, 2010. SSUF 18. Plaintiff was housed in general population housing at California Correctional Institution from June 10, 2010, until March 29, 2011. SSUF 29. From March 29, 2011, through November 1, 2011, Plaintiff was housed in administrative segregation at California Correctional Institution. SSUF 31, 32, 33, 46, 47,48, 49, & 66. "The ICC made the decision to retain in ASU because Plaintiff had two pending RVRs and CDCR policy prefers resolution of outstanding disciplinary matters before transfer, if possible." (ECF No. 223-2, p. 29).

The RVR based on the 2009 incident was adjudicated on July 22, 2011, and Plaintiff was found not guilty. SSUF 35 & 36. The RVR based on the 2007 incident was adjudicated on July 29, 2011, and Plaintiff was found guilty. SSUF 39 & 40.

c. Current Claims

The Court screened Plaintiff's Second Amended Complaint, and allowed Plaintiff to proceed "against defendants Brannum and Herrera on Plaintiff's Fourteenth Amendment procedural due process claim, Fourteenth Amendment substantive due process claim under Devereaux, retaliation claim, section 1983 malicious prosecution claim, and conspiracy claim." (ECF Nos. 76 & 77). All other claims and defendants were dismissed with prejudice. (Id.).

III. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

In Plaintiff's opposition to Defendants' motion for summary judgment, he states that he cross-moves for summary judgment. (ECF No. 235, p. 2). However, it does not appear that Plaintiff intended to move for summary judgment. Plaintiff has not shown, and does not even argue, that he is entitled to summary judgment on his claims. In fact, throughout his opposition, he states that there are material disputes of fact related to his claims. See, e.g., ECF

No. 235, p. 44 (Defendants "are not entitled to summary judgment on Plaintiff's conspiracy claim as genuine issues of material fact are in dispute, precluding summary judgment…."). Moreover, in his conclusion, he states that Defendants' "motion for summary judgment should be denied, and Plaintiff should be allowed to proceed to trial on the remaining claims." (Id. at 69). He does not ask that he be granted summary judgment as to any claim. (Id.).

Accordingly, the Court will recommend that Plaintiff's cross-motion for summary judgment be denied.

## IV. PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

On September 10, 2018, Plaintiff filed a request for judicial notice. (ECF No. 206). Plaintiff asks the Court to take judicial notice of a 60 Minutes segment titled "Reforming Solitary Confinement at Infamous California Prison." (Id. at 1). The segment "was regarding the 'nationwide reform movement that is reducing the use of solitary confinement.'" (Id.).

During an interview on the segment, "Secretary Scott Kernan, when asked, by Oprah Winfrey, about the psychological effects of solitary confinement on offenders placed in solitary confinement, admitted that 'the policy was … a mistake' and [with respect to solitary confinement] 'it didn't work because of the impact on the offenders.'" (Id. at pgs. 1-2) (alterations in original). Additionally, when Oprah Winfrey asked Scott Kernan if solitary confinement drives men mad, Scott Kernan responded "I think it does." (Id. at 2).

Finally, Plaintiff asks the Court to take judicial notice of the fact that administrative segregation is solitary confinement.

On September 18, 2018, Defendants filed their objections to Plaintiff's request. (ECF No. 208). Defendants argue that "Plaintiff has not demonstrated that the facts that he seeks the Court to judicially notice are capable of accurate and ready determination." (Id. at 3).

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The Court… must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, the Court cannot

take judicial notice of disputed matters. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 690 (9th Cir. 2001).

As it is disputed that administrative segregation is solitary confinement, the Court may not take judicial notice of this fact.

As to the statements of Scott Kernan, Plaintiff appears to ask the Court to take judicial notice of his statements for the truth of the matters asserted. However, Plaintiff has failed to show that Scott Kernan is a source whose accuracy cannot reasonably be questioned.

As to Plaintiff's request for the Court to take judicial notice that there was a 60 Minutes Segment "regarding the 'nationwide reform movement that is reducing the use of solitary confinement,'" this fact has no relevance to this motion, and appears to have no relevance to this case.

Accordingly, the Court recommends that Plaintiff's request for judicial notice be denied.

## V.      PLAINTIFF'S MOTION TO STRIKE THE AMENDED DECLARATION OF B. FEINBERG, MD

On December 26, 2018, Plaintiff filed a motion to strike the amended declaration of B. Feinberg, MD. (ECF No. 228). On January 9, 2019, Defendants filed their opposition to the motion. (ECF No. 231). On January 22, 2019, Plaintiff filed his reply. (ECF No. 232).

Plaintiff argues that the amended declaration should be stricken because it was submitted to harass Plaintiff, and because it was not timely. Plaintiff alleges that he is prejudiced by the piecemeal filings and harassment.

Defendants argue that Plaintiff's motion should be denied. According to Defendants, Plaintiff was timely provided with Dr. Feinberg's declaration. The reason Defendants filed an amended declaration is that the original was filed without a completed signature page. Defendants filed the amended declaration as soon as they noticed the error, which was one day after they filed their motion for summary judgment.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to

strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." Campbell v. Pricewaterhouse Coopers, LLP, 2007 WL 841694, at *2 (E.D. Cal. Mar. 20, 2007).

"Under the express language of [Rule 12(f)], only pleadings are subject to motions to strike." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). However, this does not mean that courts are powerless to strike documents that are not pleadings. Instead, when striking documents that are not pleadings, the Court relies on its inherent power to control its docket. Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404-05 (9th Cir. 2010); Franklin v. United States, 2012 WL 5954016, at *1 (E.D. Cal. 2012).

Plaintiff is correct that the amended declaration was filed after the dispositive motion deadline. However, Plaintiff does not dispute that the only change to the declaration was the addition of a signature, and he has not shown how the addition, which was filed only one day after the dispositive motion deadline, prejudiced him.[5] Additionally, Plaintiff has provided no evidence that the amended declaration was filed with the intent to harass Plaintiff.

Accordingly, the Court will recommend that Plaintiff's motion to strike the amended declaration of B. Feinberg, MD, be denied.

## VI. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### a. Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[5] The Court notes that Plaintiff asked for, and was granted, an extension of time to file his opposition to Defendants' motion for summary judgment (ECF No. 230).

7

admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in

the record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3);

Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

a.  Plaintiff's Section 1983 Malicious Prosecution Claim

*A.  Defendants' Position*

Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 malicious prosecution claim because Plaintiff did not have a favorable termination of his criminal case.  "The Kern County District Attorney charged Plaintiff with one count of battery upon an officer and one count of resisting an officer in the performance of duty following the events on March 4, 2009."  (ECF No. 223-2, p. 18).  At the time Plaintiff received the charges in the criminal case at issue in this lawsuit, there were criminal proceedings pending as a result of the incident in 2007.  "On September 10, 2010, Plaintiff knowingly and voluntarily entered into a plea agreement, wherein Plaintiff pleaded no contest to an Amended Count I [in the criminal case stemming from the 2007 incident], and admitted to two prior offenses in the 2007 Case.  The remaining count in the 2007 case was dismissed, and the 2009 case was dismissed entirely."  (Id.) (citations omitted).

Thus, although all charges related to the 2009 incident were dropped, they were dropped due to a plea agreement.  Accordingly, the dismissal of the 2009 case does not indicate Plaintiff's innocence, "but was the result of a negotiated plea agreement between Plaintiff and the District Attorney."  (Id. at 19).  Thus, Plaintiff has failed "to establish an essential element of his malicious prosecution claim, and Defendants are entitled to summary judgment."  (Id. at 20).

*B.  Plaintiff's Position*

"Plaintiff concedes the Defendant[s'] are entitled to summary judgment on the malicious prosecution claim, as Plaintiff cannot establish that the criminal proceedings terminated in favor of Plaintiff, as required."  (ECF No. 235, p. 67).[6]

---

[6] In a footnote included in his opposition, Plaintiff states that he is entitled to certain documents.  (ECF No. 235, p. 14 n.2).  It is unclear why Plaintiff includes this footnote.  The Court has already addressed Plaintiff's request for these documents, and Plaintiff has not moved for reconsideration.  Additionally, the non-expert discovery deadline has long since passed.

## C. Legal Standards

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right. Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (alterations in original) (citations and internal quotation marks omitted). The Ninth Circuit has also explained that, "[i]n this circuit, the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. However, an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987) (citations and internal quotation marks omitted).

The Ninth Circuit has "incorporated the relevant elements of the common law tort of malicious prosecution into [the] analysis under § 1983." Id. "The essential elements of the tort are the same in both the criminal and the civil contexts. In every case, in order to establish a cause of action for malicious prosecution a plaintiff must plead and prove that the prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992). See also McCubbrey v. Veninga, 39 F.3d 1054, 1055 (9th Cir. 1994). A plaintiff must also show "resulting damage...." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir.2008) (quoting Harbor Ins. Co. v. Cent. Nat'l Ins. Co., 165 Cal.App.3d 1029, 211 Cal.Rptr. 902, 907 (1985)).

## D. Analysis

As Plaintiff concedes that Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim because Plaintiff is unable to show that the criminal proceedings

were pursued to a legal termination favorable to him due to the charges being dropped pursuant to a plea agreement, the Court will recommend that Defendants be granted summary judgment on this claim.[7]

    b.  Plaintiff's Retaliation Claim

*A.  Defendants' Position*

Defendants argue that Plaintiff failed to establish causation between Defendants' conduct and Plaintiff's injury. "Plaintiff alleges that he was wrongfully retained in ASU as a result of exercising his right to remain silent. To the extent Plaintiff argues that he was placed in ASU at KVSP due to the retaliatory conduct, plaintiff is not challenging that time frame, and Plaintiff was already housed in ASU when he received the RVR. Plaintiff is only challenging the time that he was kept in ASU in 2011 while housed at CCI…. Plaintiff does not establish how Defendants caused Plaintiff to be placed in ASU, two years later at a different institution." (ECF No. 223-2, p. 32) (citations omitted).

Additionally, in their reply, Defendants argue that "Plaintiff does not establish that Defendants engaged in the retaliatory conduct of fabricating the 2009 RVR…. Neither Defendant fabricated their statements in their staff reports, and Defendant Herrera did not fabricate [the] RVR…." (ECF No. 238, p. 8).

*B.  Plaintiff's Position*

Plaintiff alleges that Defendants retaliated against him by fabricating a staff assault allegation against him because he exercised constitutional rights. This false allegation resulted in an RVR and criminal charges.

Plaintiff argues that Defendants did cause Plaintiff's injury, because Plaintiff being criminally charged was "the natural and proximate result" of Defendants false allegation. (ECF

///

///

---

[7] Defendants have made objections to Plaintiff's evidence (ECF No. 238-2), which the Court has reviewed. To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. It is not the practice of this Court to rule on all evidentiary objections individually in the context of summary judgment.

No. 235, p. 43). Additionally, the RVR stemming from Defendants false allegations caused Plaintiff to be retained in ASU.[8]

### C. Legal Standards

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Retaliation claims are not limited to the First Amendment. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Exercising the Fifth Amendment right against self-incrimination can be protected conduct. Bridges v. Hubbard, 2013 WL 3773886, at *9 (E.D. Cal. July 17, 2013), report and recommendation adopted, 2013 WL 5230239 (E.D. Cal. Sept. 16, 2013) (finding that Plaintiff was engaged in protected conduct when he exercised his Fifth Amendment right against self-incrimination).

### D. Analysis

As to Defendants' argument that Plaintiff failed to establish that Defendants engaged in retaliatory conduct because Defendants did not fabricate their statements, the Court finds that there is a genuine dispute of material fact as to whether Defendants fabricated their statements.

Plaintiff has presented evidence that Defendants fabricated their statements. Plaintiff has submitted a declaration, stating that "[a]t no time did [he] touch, grab, or in any way, batter Defendant Herrera, or take any clothing from his person, on March 4, 2009, as alleged by Defendant Herrera, or Brannum." (ECF No. 235, p. 5, ¶ 15). Additionally, Plaintiff stated that, as defendant Herrera was walking away from him, defendant Brannum stated "I'll say you

---

[8] The Court notes that in Plaintiff's opposition, Plaintiff includes evidence and arguments that do not relate to this case. The Court will only address evidence and arguments related to this case.

assaulted my officer…." (Id. at ¶ 17).[9]

Conversely, Defendants have presented evidence that they did not fabricate their statements. According to the declarations of Defendants, Plaintiff did grab defendant Brannum. (ECF No. 223-4, p. 2, ¶ 5; ECF No. 223-5, p. 2, ¶ 4).

While Plaintiff's declaration may be self-serving, it is no more self-serving than Defendants' declarations. Moreover, Plaintiff was a witness to the events at issue and has personal knowledge of what occurred. Merely being self-serving is not a reason to disregard a declaration under penalty of perjury based on facts in a person's personal knowledge.

As both parties have submitted evidence regarding whether Defendants fabricated their statements, there is a genuine dispute of material fact, and Defendants' argument that Plaintiff failed to establish that Defendants engaged in retaliatory conduct because Defendants did not fabricate their statements fails.

Defendants' argument regarding lack of causation also fails. A retaliation claim only requires Plaintiff to show that he suffered an adverse action. Rhodes, 408 F.3d at 567. Here, the issuance of a false RVR against Plaintiff in retaliation for exercise of a constitutional right is a sufficiently adverse action to state a claim. The issue of damages will be a question for the jury.

Therefore, the Court recommends denying Defendants' summary judgment motion as to Plaintiff's retaliation claim.

c. Plaintiff's Fourteenth Amendment Procedural Due Process Claim

A. *Defendants' Position*

Defendants argue that they are entitled to summary judgment on Plaintiff's procedural due process claim for the following reasons:

\\\

\\\

---

[9] Plaintiff also submitted declarations from two inmates regarding the incident on March 4, 2009. (ECF No. 235, pgs. 82 & 84). However, there is a dispute regarding whether the alleged witnesses would have been able to see what was occurring. (ECF No. 238, pgs. 8-9). The Court does not reach this dispute because, as discussed above, in this case Plaintiff's declaration is enough to create a genuine dispute of material fact.

### 1. Denial of Parole

As to the denial of parole, "Plaintiff cannot proceed on a due process claim for denial of parole as a due process claim relating to parole is strictly limited to procedural due process, all of which Plaintiff received." (ECF No. 223-2, p. 20). Plaintiff was represented by an attorney at the parole hearing, Plaintiff was given an opportunity to be heard, the Board of Parole Hearings explained its decision at the end of the hearing on the record, and Plaintiff received a copy of the decision.

Moreover, "[e]ven if the Court could consider the Board's denial, Plaintiff cannot establish that he was entitled to a grant of parole. The denial of Plaintiff's parole was not predicated upon the unadjudicated RVR, but on a myriad of topics and this decision was set forth and provided to Plaintiff." (Id. at 21).

### 2. Allegedly False RVR

As to the allegedly false RVR, "Plaintiff was afforded all of the due process to which he was entitled. Plaintiff was provided with a copy of RVR FB-09-03-003 before the July 22, 2011 hearing. The RVR was heard before a Senior Hearing Officer on July 22, 2011, at which time he was found not guilty. Plaintiff was also issued a written statement by the factfinder, SHO Lt. Randall, setting forth the evidence relied on and the reasons for the findings. Additionally, Plaintiff was permitted to present information in his defense. Plaintiff received all the due process to which he was entitled. Accordingly, Plaintiff does not establish a due process claim for receiving an allegedly falsified rules violation." (Id. at 23) (citations omitted).

### 3. Placement in ASU

As to Plaintiff's placement in the Administrative Segregation Unit ("ASU"), "Plaintiff's allegations regarding his time in[] ASU at CCI from March 29, 2011 through November 1, 2011, do not amount to a significant or atypical hardship." (Id. at 24).

### 4. Conditions of Cell

Plaintiff has no complaints about the physical condition of the cell he was placed in from March 29, 2011, through October 15, 2011.

"As to Plaintiff's allegations that his medical accommodation chronos required him to be housed on the lower tier during the relevant time frame, Plaintiff's medical accommodation chronos do not support this." (Id.).

While Plaintiff does allege that the cell he was placed in from October 15, 2011, through November 11, 2011, had no furnishings and had feces on the wall, these allegations do not rise to the level of an atypical or significant hardship. "Court's considering allegations similar to Plaintiffs, for conditions of confinement claims, have considered conditions worse than Plaintiff's allegations and have found no violation of the Eighth Amendment." (Id. at 25). Additionally, "Plaintiff was, by his own admission, provided a mattress. Plaintiff was also provided all bedding and property that he would have had in his previous cell. The cell had a toilet and sink. The limited difference was the lack of bench and lack of desk, but the cell was the same size as his previous cell." (Id. at 26) (citations omitted).

### 5. Lack of Family Visitation

"To the extent that Plaintiff claims the lack of family visitation amounts to an atypical hardship, courts have found to the contrary." (Id. at 27). "Accordingly, as a matter of law, Plaintiff cannot state a due process claim on the ground that he lost family visitation while in ASU." (Id.).

### 6. Causation

Finally, Defendants argue that Plaintiff's due process claim fails because Plaintiff cannot establish causation. "Plaintiff alleges that he was improperly housed in ASU at CCI from March 29, 2011, until the adjudication of the two outstanding RVRs, which were resolved on July 22 and July 29, 2011. On June 10, 2010, Plaintiff was transferred to CCI and was initially housed in general population housing. However, on March 29, 2011, Plaintiff and other inmates were placed into ASU at CCI due to a housing conversion that eliminated general population housing at CCI. The ICC decided to retain Plaintiff, meaning the ICC decided to keep Plaintiff in ASU, as a result of their consideration of his case factors. The ICC noted that Plaintiff was placed into ASU because of the elimination of general population housing as a result of the SHU conversion. The ICC further noted that as of March 29, 2011, Plaintiff still

had two pending RVRs: the 2007 RVR and March 4, 2009 RVR." (<u>Id.</u> at 28) (citations omitted). "Defendants did not cause the elimination of general population housing at a different institution more than two years after the 2009 Rules Violation was issued. Further, the elimination of housing is an unforeseen intervening cause, breaking any cognizable chain of causation." (<u>Id.</u>).

"The ICC made the decision to retain in ASU because Plaintiff had two pending RVRs and CDCR policy prefers resolution of outstanding disciplinary matters before transfer, if possible. Further, Plaintiff fails to acknowledge that the two RVRs could not be adjudicated until after Plaintiff had transferred to CCI. Plaintiff had postponed his adjudication of the Rules Violations until after the criminal matters were adjudicated, which was in September 2010, after Plaintiff had already transferred to CCI. He was placed in ASU, however, due to the housing shortage – not the RVRs. Thus, the two RVRs were permitted to be adjudicated and CDCR policy preferred the resolution of the RVRs before transfer to a different institution. There was no available level IV general population housing that met Plaintiff's housing and custody needs at CCI as of March 29, 2011; thus, in order to comply with policy and adjudicate the RVRs, the ICC elected to keep Plaintiff in ASU at CCI." (<u>Id.</u> at 29).

Moreover, "Plaintiff also fails to address the fact that he had two different pending RVRs. Plaintiff does not demonstrate that had Defendant Herrera not prepared the 2009 RVR that he would not have been retained in ASU, because the 2007 RVR was also pending at that time. The 2007 RVR was not adjudicated until July 29, 2011. Assuming that the 2009 RVR did not exist, there is no indication that Plaintiff would not have been placed in ASU at CCI because the 2007 RVR could not be adjudicated any earlier than when the corresponding criminal matter was resolved in September 2010. This was several months after Plaintiff had transferred to CCI. As such, the adjudication of the 2007 RVR would have occurred at CCI regardless of the 2009 RVR." (<u>Id.</u>) (citations omitted).

Plaintiff also "alleges that he was wrongfully retained in ASU at CCI from July 22, 2011 until October 15, 2011, as a result of the allegedly falsified 2009 RVR. Notably, however, Plaintiff's residence in ASU from July 22, 2011, through to November 1, 2011, was

after the allegedly falsified 2009 RVR was adjudicated on July 22, 2011. As of July 22, 2011, both the criminal charges and disciplinary charges stemming from the events of March 4, 2009, were resolved." (Id. at 30).

"Plaintiff remained in ASU at this time due to the need to adjudicate the 2007 RVR and as a result of the lack of general population beds and lack of available institution that met Plaintiff's level four classification and custody needs. Following adjudication of the 2007 RVR on July 29, 2011, the ICC reviewed Plaintiff's classification factors on August 4, 2011. The ICC endorsed Plaintiff for transfer to another institution. Noting the elimination of general population bed space, the ICC decided to retain Plaintiff in ASU pending transfer. The ICC requested [sic] were not available for transfer, and reviewing staff approved retention ASU pending availability of transfer to a different institution." (Id.) (citations omitted).

As to Plaintiff's placement in a management cell on October 15, 2011, "[a] medical chrono noted that Plaintiff had been placed in a management cell in order to enable him to stay single celled, as he had refused a cellmate. Management cells are only used for housing [a] single inmate at a time. ASU cells are able to accommodate two inmates. Plaintiff's placement in a management cell accommodated the need to use all available bed space." (Id. at 31) (citations omitted).

"Plaintiff does not allege the individual conduct of defendants that culminated in placement in a management cell after the RVR was adjudicated. Plaintiff does not establish how Defendants, at Kern Valley State Prison, somehow had a role in housing decisions at any junction, but especially not after the RVR and criminal charges were resolved. Housing decisions are made by an independent committee, the ICC at the CCI. Defendants played no part in those decisions, and Plaintiff fails to establish any facts to the contrary. Accordingly, Plaintiff fails to establish causation to success on his due process claim." (Id.) (citations omitted).

### B. Plaintiff's Position

Plaintiff does not specifically address his procedural due process claim.

\\\

## C. Legal Standards

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, "[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake." Coakley v. Murphy, 884 F.2d 1218, 1220 (9th Cir.1989). A liberty interest may arise from the Constitution itself, or from an expectation or interest created by state law or prison regulations. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

When a state creates a liberty interest, the interest "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84.

The United States Supreme Court, in determining if disciplinary proceedings resulting in thirty days of solitary confinement had to comply with due process, provided the following guidance in determining when there is a deprivation of liberty interests such that procedural due process is due in the prison context:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263-1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221-222, 110 S.Ct., at 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life….

> This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, *Wolff, supra,* at 571, n. 19, 94 S.Ct., at 2982, n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976) (assuming without deciding that freedom from punitive segregation for "

'serious misconduct' " implicates a liberty interest, holding only that the prisoner has no right to counsel) (citation omitted), this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests.  We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.  The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.  We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation.  Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population.  Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353-68, 353-69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23-700-33(b) (effective Aug. 1992).  The decision to release a prisoner rests on a myriad of considerations.  And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record.  Haw.Admin.Rule §§ 23-700-31(a), 23-700-35(c), 23-700-36 (1983).  The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.  The Court rejected a similar claim in *Meachum,* 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

Sandin, 515 U.S. at 483-87 (footnotes omitted).

Thus, in Sandin, the Supreme Court held that neither thirty days of solitary confinement nor issuance of an RVR that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process requirements in that case. Regarding the issue of parole in particular, the Court found that the fact that charges could be used against the prisoner in his parole hearing was not a significant deprivation of his liberty interests because the charges did not inevitably affect his sentence, parole was based on a myriad of considerations, and the prisoner had a chance to explain the circumstances behind his

record.

To the extent that Plaintiff is entitled to due process under the legal standards discussed above, Plaintiff retains his right to due process subject to the restrictions imposed by the nature of the penal system. <u>Wolff</u>, 418 U.S. at 556. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Id.</u> But the due process clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. <u>See id.</u> at 556-57, 571-72 n.19.

<u>Wolff</u> established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." <u>Id.</u> at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." <u>Id.</u> Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." <u>Id.</u> (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Id.</u> at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a[n] … inmate designated by the staff." <u>Id.</u> at 570.

### D. Analysis

Plaintiff has failed to address his procedural due process claim in his opposition.

Moreover, he only asks that Defendants' "motion for summary judgment be denied as to Plaintiff's Retaliation, Conspiracy, and Deveraux, claims…." (ECF No. 235, p. 69). Thus, it appears that Plaintiff conceded that Defendants are entitled to summary judgment on this claim.

Even assuming that Plaintiff did not intend to concede that Defendants are entitled to summary judgment on this claim, the Court will recommend that Defendants be granted summary judgment on this claim because Plaintiff failed to present any evidence that Defendants are the cause of him failing to receive the appropriate process before any loss of liberty.

Generally, "[a] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner receives procedural due process during his disciplinary hearing, a prisoner's allegation of a fabricated prison disciplinary charge fails to state a cognizable claim for relief under § 1983." Harper v. Costa, 2009 WL 1684599, at *2 (E.D. Cal. June 16, 2009), subsequently aff'd, 393 F. App'x 488 (9th Cir. 2010) (citations omitted).

Here, it is not disputed that Plaintiff eventually received procedural due process in the form of a disciplinary hearing. The RVR based on the 2009 allegations was eventually adjudicated, and Plaintiff was found not guilty. That hearing complied with the due process requirements set forth in Wolff. However, it took over two years for the RVR to be adjudicated (Plaintiff received the RVR on March 4, 2009, and it was not adjudicated until July 22, 2011). Defendants claim that because Plaintiff has not tied that delay in receiving a hearing to Defendants, they cannot be liable for violating his right to procedural due process.

Neither party has cited to a case directly addressing the issue here, i.e., whether a claim against officers who made the allegedly false statements can proceed when the process, such as a disciplinary hearing, was provided, but much later and arguably after the plaintiff already lost a liberty interest. As cited above, the cases addressing the issue more generally state that there is no claim where process was given, but do not address what claim exists against whom when the process was not given or was delayed.

21

After review of the relevant cases, the Court ultimately recommends adopting Defendants' interpretation that a procedural due process claim based on false allegations can only proceed against those who denied or delayed the process, and not against the officers who made the allegedly false allegations, to the extent that those officers did not have a role in the hearing process. Ultimately, the Court makes this recommendation because the <u>Devereaux</u> substantive due process claim, discussed below, is more directly on point. Based on this Court's review of the case law in this area, which is still developing, it appears that a false allegation leading to criminal and disciplinary proceedings should be evaluated as a substantive due process claim with the elements addressed below, rather than a procedural due process claim.

Thus, as Plaintiff has provided no evidence that Defendants were responsible for denying, delaying, or failing to provide Plaintiff with procedural due process, the Court will recommend that Defendants be granted summary judgment on this claim.[10]

> d. <u>Plaintiff's Fourteenth Amendment Substantive Due Process Claim Under Devereaux</u>

Plaintiff's <u>Devereaux</u> claim is proceeding based on the allegations that Defendants falsified evidence against him, that the false evidence was used to bring both criminal and disciplinary proceedings against him, and that he was deprived of liberty as a result.

> *A. Defendants' Position*

Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish that a life, liberty, or property interest is at stake. As "there is no constitutional right to be free of false disciplinary violations, [] Plaintiff cannot establish a liberty interest on that basis." (<u>Id.</u> at 33-34). "To the extent that Plaintiff is alleging he was confined in ASU for a prolonged period of time as the liberty interest, he fails to present a claim because his time in ASU was not an atypical and significant hardship." (<u>Id.</u> at 34).

---

[10] The Court does not reach the issue of whether there would be a procedural due process claim against the prison official(s) responsible for delaying the hearing on the allegedly false RVR.

As to the criminal charges, "Defendants had no role in the investigation of RVR FB-09-03-003 or the investigation of the criminal charges stemming from March 4, 2009." (Id.). Additionally, "Defendants played no role in the referral to the district attorney's office as that was prepared and submitted by ISU staff. Plaintiff alleges that Defendants prepared the request for charges and probable cause declaration, however, neither was prepared by Defendants, but staff in the ISU." (Id.) (citations omitted). "Defendants prepared a staff report following the incident as required by policy. The Facility Lieutenant then compiled the incident report, which was given to the ISU, which was then submitted along with the entire referral package to the Kern County District Attorney's Office." (Id.).

Additionally, Plaintiff's Devereaux claim fails because he cannot establish that Defendants fabricated evidence. "Plaintiff appears to allege that Defendants fabricated the RVR FB-09-03-003 and the corresponding incident report, amounting to 'fabricated evidence.' However, Plaintiff cannot establish that the incident report or RVR FB-09-03-003 are fabricated. Neither Defendant fabricated their statements in their staff reports, and Defendant Herrera did not fabricate RVR FB-09-03-003. Plaintiff's attestations to the contrary, without more, do not defeat summary judgment." (Id. at 35) (citation omitted).

### B. Plaintiff's Position

Plaintiff argues that the conditions under which he was housed from March 29, 2011, through October 31, 2011, imposed a significant and atypical hardship on him.

As to Defendants' argument that they had no role in the investigation of the criminal charges stemming from the March 4, 2009 incident, or the referral to the district attorney, Plaintiff argues that he has presented evidence that Defendants fabricated charges against him, and as a result of the fabricated evidence, Plaintiff was subjected to criminal charges. "[I]t must be outlined that the sole basis for the criminal charges were the contents of [Defendants'] Crime Reports." (Id. at 59). In fact, "no investigation was done…." (Id. at 66).

### C. Legal Standards

In the criminal context and in the context of certain administrative proceedings, deliberately false allegations can give rise to a due process claim where there was

23

a resulting deprivation of liberty. <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (*en banc*) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); <u>Costanich v. Dep't of Soc. & Health Servs.</u>, 627 F.3d 1101 (9th Cir. 2010) (denying summary judgment on a fabrication of evidence claim against a defendant based on evidence that the defendant falsified evidence that was used in an administrative proceeding, and which led to the revocation of Plaintiff's foster care license and loss of guardianship of two minor children); <u>Chappell v. Bess</u>, 2012 WL 3276984, at *22 (E.D. Cal. Aug. 9, 2012) ("The court finds that plaintiff has alleged the deprivation of a cognizable liberty interest based on his allegations that, as a result of defendants' alleged fabrication of evidence, plaintiff was subjected to unwarranted disciplinary proceedings and criminal prosecution, and was retained in administrative segregation for more than two years, the latter, particularly if unwarranted, constituting an atypical and significant hardship ... in relation to the ordinary incidents of prison life.") (alteration in original) (citation and internal quotation marks omitted)

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." <u>Spencer v. Peters</u>, 857 F.3d 789, 798 (9th Cir. 2017) (citations omitted).

### D. Analysis

Defendants argue that Plaintiff's <u>Devereaux</u> claim fails because Plaintiff cannot establish that Defendants fabricated evidence. However, as analyzed above, Plaintiff has provided sufficient evidence to establish a dispute of fact regarding whether Defendants fabricated their statements, which they made on Crime/Incident Reports.

As to Defendants' argument that they had no role in investigating the incident or choosing to prosecute Plaintiff, taking Plaintiff's evidence as true, Defendants, who were employed as correctional staff, fabricated Crime/Incident Reports. At the very least, there is a dispute of fact regarding whether these allegedly false reports and allegations were the sole or at least primary basis for both the RVR and the criminal charges. Defendants have pointed to no other evidence that could have been the basis of the allegedly false charges. Additionally, the probable cause declaration appears to be taken almost verbatim from the allegedly false RVR and Crime/Incident Reports. (Compare ECF No. 223-15, p. 48 with ECF No. 223-4, p. 8; ECF No. 223-4, p. 10; and ECF No. 223-5, pgs. 5-6). Thus, there is evidence in the record that government officials deliberately fabricated evidence, and that the evidence was used to charge Plaintiff with an RVR and a crime.

As to Defendants' argument that Plaintiff failed to show that he was deprived of a liberty interest, Plaintiff has provided sufficient evidence, albeit disputed, that he was deprived of a liberty interest as a result of the false evidence and resulting RVR and criminal charges. When a state creates a liberty interest, the interest "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,… nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84.

The Court notes that neither party provided a full comparison between the conditions where Plaintiff was held with conditions on other inmates. Nor is there a full evaluation of Plaintiff's own conditions in the ASU, including amount of contact with other inmates or exercise time. As described more fully above, the chronology of Plaintiff's time in segregated custody is far from clear.

The Court finds that Plaintiff has submitted sufficient evidence to survive summary judgment on this issue based on his allegation that his time in ASU, in which he was held alone for some (if not all) of the duration based on false charges, combined with the loss of

programming, was an atypical and significant hardship.[11]  While Plaintiff may have been in ASU in the past, it is undisputed that he was in general population from June 10, 2010, until March 29, 2011.  SSUF 29.  It is also undisputed that he was retained in ASU from March 29, 2011, through November 1, 2011.  SSUF 31, 32, 33, 46, 47, 48, 49, & 66.  This was significantly longer than the 30-day period in Sandin.  Additionally, Plaintiff has presented evidence that, prior to being placed and retained in ASU, he "maintained a positive program." (ECF No. 235, p. 29; ECF No. 72, p. 9).[12]

In a somewhat similar case, a plaintiff alleged that certain correctional officer defendants planted heroin on him.  Chappel, 2012 WL 3276984, at *1.  As in this case, the plaintiff was subjected to both disciplinary charges and criminal prosecution.  (Id.).  Additionally, as in this case, the defendant correctional officers allegedly made false statements.  (Id.).  When denying the defendants' motion for summary judgment on the fabrication of evidence claim, the "court [found] that plaintiff [] alleged the deprivation of a cognizable liberty interest based on his allegations that, as a result of defendants' alleged fabrication of evidence, plaintiff was subjected to unwarranted disciplinary proceedings and criminal prosecution, and was retained in administrative segregation for more than two years, the latter, particularly if unwarranted, constituting an atypical and significant hardship ... in relation to the ordinary incidents of prison life."  Id. at 22 (alteration in original) (citation and internal quotation marks omitted).  Additionally, the Court explained, "plaintiff's evidence (particularly his acquittal on the resulting criminal charges) is sufficient to overcome defendants' summary judgment motions.  Whether defendants fabricated evidence against plaintiff, and thus engaged in abusive investigative techniques for the purpose of yielding false information, Devereaux, 263 F.3d at 1076, remain material factual disputes."  (Id.) (footnote omitted).  Accordingly, that court ruled that "defendants' motions for summary judgment on

---

[11] Plaintiff was eventually offered a cellmate, but it appears that this did not occur until sometime in October of 2011.  (ECF No. 223-12, p. 10, ¶ 34).  Plaintiff was already in the ASU for approximately six months before this occurred, which is still significantly longer than the 30-day period in Sandin.

[12] Plaintiff's Second Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

plaintiff's fabrication-of-evidence ('*Devereaux*' ) due process claim must be denied." Chappel, 2012 WL 3276984, at *23.

As in Chappel, there are material factual disputes concerning the alleged fabrication of evidence, and Defendants' motion for summary judgment is supported by little more than mere denials. While there are some differences between the cases, they are not enough to warrant a different result. One difference is that the plaintiff in Chappel was acquitted while Plaintiff had his charges dropped under a plea agreement (although Plaintiff was found not guilty of the RVR). Additionally, two years in the ASU (which was the allegation in Chappel) is significantly longer than seven months in the ASU (which is Plaintiff's allegation in this case). However, the Court finds that seven months, in which Plaintiff was held alone for some (if not all) of the duration, and which was (taking Plaintiff's evidence as true) unwarranted, is still enough to create a dispute of fact regarding whether Plaintiff was subjected to a significant and atypical hardship. See also Kervin v. Barnes, 787 F.3d 833, 836–37 (7th Cir. 2015) ("The judge's second error was to suggest … that a prisoner must spend at least six months in segregation before he can complain about having been deprived of liberty without due process of law. A considerably shorter period of segregation may, depending on the conditions of confinement and on any additional punishments, establish a violation, as held in such cases as Palmer v. Richards, 364 F.3d 60, 65–67 (2d Cir.2004) (77 days); Mitchell v. Horn, 318 F.3d 523, 527, 532–33 (3d Cir.2003) (90 days); and Gaines v. Stenseng, 292 F.3d 1222, 1225–26 (10th Cir.2002) (75 days)."). Thus, Defendants' argument that Plaintiff failed to submit evidence that he was deprived of a liberty interest fails.

The Court could end its analysis of Plaintiff's Devereaux claim here, because, while Defendants argued lack of causation regarding Plaintiff's placement and retention in the ASU in relation to Plaintiff's procedural due process claim, they did not argue lack of causation regarding Plaintiff's Devereaux claim. Therefore, it appears that this argument was waived.

However, even if the argument were not waived, the argument would fail. Defendants argue that Plaintiff was placed into the ASU because of a mission change at CCI, and not because of Defendants' conduct. However, Plaintiff was not just placed in ASU, he was also

retained in ASU. And, Defendants themselves admit that "[t]he ICC made the decision to retain in ASU because Plaintiff had two pending RVRs and CDCR policy prefers resolution of outstanding disciplinary matters before transfer, if possible." (ECF No. 223-2, p. 29). Thus, the 2009 RVR was explicitly mentioned as a factor in retaining Plaintiff in ASU.

Defendants argue that "Plaintiff does not demonstrate that had Defendant Herrera not prepared the 2009 RVR that he would not have been retained in ASU, because the 2007 RVR was also pending at that time." (Id.). However, the record is far from undisputed on this point. It is true that Plaintiff was not released from ASU immediately following the adjudication of the 2009 RVR but prior to the adjudication of the 2007 RVR. While this suggests that Plaintiff would have been held in the ASU even if in the absence of the allegedly false RVR, he was not immediately released after adjudication of the 2007 RVR either. Moreover, the RVRs were adjudicated only one week apart. See SSUF 34 & 39. Thus, the fact that Plaintiff was held in the ASU after the 2009 RVR was adjudicated but prior to the adjudication of the 2007 RVR does not conclusively show that the 2009 RVR had no effect on Plaintiff's retention in the ASU.

Therefore, even if this argument were properly before the Court (and it does not appear to be), based on the evidence presented, the Court is unable to determine as a matter of undisputed fact that the 2009 RVR had no effect on Plaintiff's retention in the ASU.

Accordingly, the Court recommends denying Defendants' summary judgment motion as to Plaintiff's Devereaux substantive due process claim. Plaintiff has submitted sufficient evidence from which a jury might conclude that Plaintiff was subjected to criminal and disciplinary charges because of evidence fabricated by Defendants, and that he was deprived of liberty as a result of the charges.

e. Plaintiff's Conspiracy Claim

A. *Defendants' Position*

Defendants argue that, as "Plaintiff cannot establish a viable underlying constitutional claim to succeed on a conspiracy claim, [] his conspiracy claim fails as a matter of law." (ECF No. 223-2, p. 36).

Additionally, in their reply, Defendants argue that "Plaintiff has not provided any evidence to indicate that the Defendants conspired to procure criminal charges against Plaintiff." (ECF No. 238, p. 9) (internal quotation marks omitted).

### B. Plaintiff's Position

Plaintiff argues that he has "demonstrated that genuine issues of material facts are in dispute, with respect to Plaintiff's retaliation claim," which precludes summary judgment on his conspiracy claim. (ECF No. 235, p. 45). He has also established "that the criminal charges were the product of fabricated evidence…." (Id. at 67). Thus, his <u>Deveraux</u> claim should survive summary judgment as well, precluding summary judgment on his conspiracy claim.

Plaintiff alleges that Defendants "conspired to fabricate the contents of their Crime Reports, as well as the RVR, which fabrications, became the basis for criminal charges…." (Id.). Defendant Herrera wrote in both an RVR and in a Crime/Incident report that Plaintiff grabbed him. Defendant Brannum reviewed defendant Herrera's Crime/Incident Report, and noted "<u>No clarification needed</u>." (Id. at 46-47). Defendant Brannum also authored a Crime Report, in which he wrote that Plaintiff grabbed defendant Herrera. However, Plaintiff never touched defendant Herrera. Based on these facts, Plaintiff argues that "it is clear that 'there was an agreement or meeting of the minds….'" (Id. at 47).

Additionally, prior to authoring these documents, "Defendant Brannum stated, 'I'll say you assaulted my officer!'" (Id. at 49).

Further, the fact that the Crime/Incident Report written by defendant Brannum and the Crime/Incident Report written by defendant Herrera contain the same typo, as well as other similarities, shows a meeting of the minds or an agreement as to the contents of their Crime/Incident Reports.

Moreover, there was an agreement or meeting of the minds not to take photographs of the alleged injury to defendant Herrera (the regular practice is to take photographs when an incident such as this occurs). (Id.).

\\\
\\\

*C. Legal Standards*

To state a claim for conspiracy under § 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, <u>Avalos v. Baca</u>, 596 F.3d 583, 592 (9th Cir. 2010); <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must present evidence that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." <u>Sykes v. State of California</u>, 497 F.2d 197, 200 (9th Cir. 1974).

*D. Analysis*

Defendants are correct that if all of Plaintiff's other claims for violation of his constitutional rights failed, he would not be able to proceed on a conspiracy claim. However, as discussed above, the Court finds that Plaintiff has provided sufficient evidence to defeat summary judgment as to his retaliation claim and his <u>Devereaux</u> substantive due process claim.

As to Defendants' argument that Plaintiff failed to provide evidence that Defendants conspired to procure criminal charges against Plaintiff, this argument also fails. Plaintiff's conspiracy claim is proceeding based on Plaintiff's allegation of "a conspiracy between defendants Herrera and Brannum to deprive Plaintiff of his constitutional rights by filing false charges against him." (ECF No. 76, p. 13; ECF No. 77). As discussed above, Plaintiff has presented evidence that Defendants intentionally fabricated their statements.

Plaintiff has also presented evidence that Defendants worked together to fabricate their statements. Plaintiff presented evidence that, after the incident, as defendant Herrera was walking away from Plaintiff, defendant Brannum stated "I'll say you assaulted my officer…."

(ECF No. 235, p. 5, ¶ 17). Then, taking Plaintiff's evidence as true and viewing it in the light most favorable to Plaintiff, Defendants both made false statements on separate Crime/Incident Reports. Additionally, as Plaintiff points out, the Crime/Incident Reports contain the same typo, as well as other similarities (ECF No. 223-4, p. 10; ECF No. 223-5, pgs. 5-6), suggesting that Defendants worked on the reports together. Thus, Plaintiff has presented sufficient evidence to survive summary judgment on his conspiracy claim, and the Court will recommend that Defendants' motion for summary judgment be denied as to the conspiracy claim.

  f. <u>Damages</u>

### A. *Defendants' Position*

Defendants argue that Plaintiff is limited to recovery of only nominal damages because he cannot establish a basis for compensatory damages.

"As to Plaintiff's physical injuries claims – loss of consortium, increased blood pressure, and insomnia, Plaintiff's conditions predated the Defendants' conduct." (ECF No. 223-2, p. 37).

"As to Plaintiff's claim for loss of consortium, Defendants had no role in Plaintiff's ability to see family. By Plaintiff's own admission, inmates placed in ASU were not allowed family visits until 2014 – several years after Plaintiff's placement in ASU in 2011." (<u>Id.</u>).

As to Plaintiff's claims for mental and emotional damages, "Plaintiff's medical history was reviewed, and Plaintiff was evaluated and was found to present only antisocial personality disorder and malingering. Depression was a pre-existing condition, and his depression has not worsened as a result of Defendants' conduct or placement in ASU. Plaintiff has no diagnosis of post-traumatic stress disorder, or any other mental or emotional injuries." (<u>Id.</u> at 37-38) (citations omitted).

### B. *Plaintiff's Position*

Plaintiff argues that he "should not be limited to recovery of only nominal damages…." (ECF No. 235, p. 68). Plaintiff has put forth evidence demonstrating that his mental health deteriorated as a result of Defendants' conduct.

Plaintiff's placement in a management cell was retaliatory and punitive, not an attempt to maximize bed space.

"It has been determined by many experts, including Scott Kernan, former Secretary of CDCR, that prolonged solitary confinement has a psychologically damaging effect[] on those subjected to solitary confinement." (Id. at 69).

### C. Analysis

Defendants are correct that Plaintiff does not have a diagnosis of insomnia or post-traumatic stress disorder. SSUF 59 & 64. Additionally, as Plaintiff is not qualified as an expert, he may not opine that the false charges he received caused him to suffer from conditions such insomnia or post-traumatic stress order.

However, Plaintiff may testify as to things he experienced, and he has submitted a declaration under penalty of perjury that, after he received the false charges, he became so distraught that he would not take food from officers. (ECF No. 235, p. 8, ¶ 33). Additionally, he suffered feelings of helplessness, nightmares, flashbacks, and anxiousness. (Id. at p. 10, ¶ 49). Thus, Plaintiff has submitted sufficient evidence to create a dispute of fact as to whether he is entitled to compensatory damages, and the Court will recommend that Defendants' motion for summary judgment as to damages be denied.

## VII. RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 223) be GRANTED in part and DENIED in part;

2. This case proceed only on Plaintiff's <u>Devereaux</u> substantive due process claim, retaliation claim, and conspiracy claim, and that Defendants be GRANTED summary judgment as to all other claims;

3. Defendants' summary judgment motion be DENIED as to damages;

4. Plaintiff's cross-motion for summary judgment (ECF No. 235) be DENIED;

5. Plaintiff's request for judicial notice (ECF No. 206) be DENIED; and

6. Plaintiff's motion to strike the amended declaration of B. Feinberg, MD (ECF No. 228) be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 25, 2019**                    /s/ Errin P. Grosj

UNITED STATES MAGISTRATE JUDGE