# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD RANSOM, JR., | 1:11-cv-01709-LJO-EPG-PC |
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE MOTIONS IN LIMINE (ECF NOS. 269 & 272); AND OBJECTIONS TO AND MOTIONS TO AMEND THE PRETRIAL ORDER (ECF NOS. 282, 283 & 286) |
| v. | |
| DANNY HERRERA, et al., | |
| Defendants. | |

## I. INTRODUCTION

This case is set for trial September 24, 2019, on Plaintiff's Second Amended Complaint (ECF No. 72), against defendants Brannum and Herrera. Remaining to be tried are claims brought under 42 U.S.C. § 1983 based upon: Fourteenth Amendment procedural due process, Fourteenth Amendment substantive due process under *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), retaliation for the exercise of a constitutional right, malicious prosecution, and conspiracy. *See* ECF No. 256 at 1; *see also* ECF Nos. 76 & 77. Before the Court for consideration are six defense motions *in limine* (ECF No. 269) as well as eight filed by Plaintiff (ECF No. 272). In addition, the parties have filed various motions objecting to content in and requesting amendment of the Pretrial Order. ECF Nos. 283, 283, 286.

## II. BACKGROUND

For purposes of evaluating the present motion, the Court sets forth the following general outline of the facts as described in the findings and recommendations addressing Defendants' motion for summary judgment, which based its factual summary on material that was, at that time, undisputed or supported by admissible evidence submitted by Plaintiff. *See* ECF No. 249 at 2-4.

Plaintiff received a Rules Violation Report ("RVR") for battery on a peace officer based on an incident that occurred on May 22, 2007. The Kern County District Attorney's Office elected to

1

prosecute Plaintiff based on the May 22, 2007 event. Plaintiff was placed in administrative segregation at Kern Valley State Prison on May 22, 2007.

On March 4, 2009, while Plaintiff was in administrative segregation, Defendants approached Plaintiff's cell to transport Plaintiff to a medical appointment. Defendants contend that Plaintiff grabbed defendant Herrera. Plaintiff maintains that Defendants were verbally abusive, and that Plaintiff indicated to Defendants that he was not willing to go to the medical appointment. According to Plaintiff, Defendant Brannum then told Plaintiff that he would say that Plaintiff assaulted an officer. On the same day, Plaintiff was charged with an RVR for battery on a peace officer, and later received criminal charges based on the same allegations, allegations Plaintiff maintains are false.

Plaintiff agreed to plead no contest a criminal charge based on the 2007 incident in exchange for dismissal of other charges based on the 2007 incident, as well as dismissal of the charges based on the 2009 incident. Plaintiff entered his plea sometime in September of 2010. On July 22, 2011, Plaintiff was found not guilty of the RVR based on the 2009 incident.

Meanwhile, Plaintiff was transferred to North Kern State Prison ("North Kern") on January 5, 2010. On June 10, 2010, he was again transferred, this time from North Kern to California Correctional Institution ("CCI"). Plaintiff was housed in general population housing at CCI from June 10, 2010, until March 29, 2011. From March 29, 2011, through November 1, 2011, Plaintiff was housed in administrative segregation.

Plaintiff alleges that Defendants conspired to bring the 2009 RVR against him because he refused to implicate himself in connection with the 2007 staff assault incident. Although the RVR based on the 2009 incident was resolved in Plaintiff's favor, Plaintiff complains that he subjected to a prolonged period in administrative segregation and had to defend against the false criminal charges premised upon the alleged 2009 incident.

### III. MOTIONS RELATED TO THE PRETRIAL ORDER

The parties have filed several motions related to the pretrial order. First, Defendant filed

"objections" to the pretrial order. ECF No. 282. The objections focus on Plaintiff's proffered undisputed facts, and argue that certain facts that are listed in the Pretrial Order, which were excerpted directly from Plaintiff's Pretrial Statement. should not be considered undisputed. This motion is unnecessary. The pretrial order was not intended to establish any of the listed fact as actually undisputed. Rather, it simply lists the facts each party stated were undisputed.

Next, the Parties seek to amend the pretrial order in various ways. First, the parties apparently have stipulated to the admissibility at trial of certain medical records provided by Plaintiff in a Supplement to his Pretrial Statement. ECF No. 251. Those exhibits, apparently for the first time, raise the allegation that Plaintiff suffers from PTSD. ECF No. 283 at 3.

Defendants now move to add to their exhibit list (and therefore to the exhibits listed in the Pretrial Order) certain RVRs they claim relate to Plaintiff's PTSD. *Id*. Plaintiff objects, asserting that counsel has not been provided with the relevant RVRs or related documents and it remains unclear how they are relevant. ECF No. 294.

Plaintiff, in turn, moves to amend the pretrial order to permit him to call Plaintiff's treating psychiatrist, Dr. Zinzi Raymond, as an expert witness at trial, despite that she has not been named before as a witness, expert or otherwise. ECF No. 286. Plaintiff claims that this witness should now be permitted because Plaintiff's counsel was recently appointed and needed time to review all relevant documents. *Id*. at 2-3. In addition, Plaintiff claims that her testimony will be critical to giving the jury a clear understanding of Plaintiff's mental status. *Id*. at 3. Defendants object, indicating they will be prejudiced by this late addition, as their own witnesses will not have the opportunity to prepare for rebuttal testimony or any necessary reports. EFC No. 293.

There are multiple reasons why the Court imposes discovery deadlines. Among other things, cases in which the issues are not solidified and settled prior to trial take much longer to try. The Court has an obligation to manage its caseload and access to courts to avoid wasted resources. The Court will therefore not let the Parties' stipulation to permit the admission of certain records to snowball into a last-

minute discovery blizzard. The Parties must make an election. Either they both agree to extend the discovery deadline to address this new information in a measured fashion, an election that will necessitate setting a new trial date, or the case will proceed without any of the new information, including the information that is the subject of the Parties' stipulation. Within ten (10) calendar days of the date of this Order, the Parties shall inform the Court of their election by sending a joint email to ljoorders@caed.uscourts.gov. If they elect to pursue further discovery and a new trial date, they shall also provide the Court with a proposed schedule for abbreviated additional discovery and all dates on which they are available for trial in November and early December of this year.

## IV. ANALYSIS OF MOTIONS IN LIMINE

**A.     Defense Motions *in Limine***

Defendants' first motion in limine requests that Plaintiff be precluded from offering certain types of testimony as to the nature and extent of his alleged injuries. Specifically, Defendants request that Plaintiff be precluded from offering opinions or inferences about the extent of his alleged injuries as well as about the cause of, or diagnosis (i.e., medical nature of any injuries or ailments) related to his injuries.

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Plaintiff's testimony is subject to this rule. As a non-expert witness, Plaintiff may testify as to what he saw or felt relating to his medical needs or condition, but may not testify as to any medical matter which requires scientific, technical or other specialized knowledge. *See Gilmore v. Lockard*, No. 1:12-CV-00925 SAB PC, 2017 WL 615155, at *2 (E.D. Cal. Feb. 14, 2017). He may also testify as to how he believes his injuries were caused. *See Sienze v. Kutz*, No. 1:17-CV-0736 AWI SAB, 2019 WL 1332184, at *3 (E.D. Cal. Mar. 25, 2019). In addition, Plaintiff is correct that he may testify as to his understanding of any medical diagnosis he received from

a medical professional. The motion to preclude any testimony that goes beyond that permitted from a lay witness is GRANTED.

Relatedly, Defendants' second motion in limine requests that Plaintiff be precluded from introducing his medical records into evidence. Information regarding medical opinions and observations from medical records are hearsay, and may not be admitted without a testifying medical professional. See *Gilmore*, 2017 WL 615155, at *2. Plaintiff does not dispute that he cannot testify regarding medical causation and may not interpret his own medical records. ECF No. 285 at 2. However, Defendants' motion is premised upon the assumption that Plaintiff will not be permitted to call Plaintiff's treating psychiatrist, Dr. Zinzi Raymond, at trial. Whether or not Dr. Raymond will be available to testify for Plaintiff is dependent on the Parties' election in connection with the above ruling on their motions to amend the Pretrial Order.

Defendants' third motion in limine seeks to exclude evidence that any defendant is a party in any other lawsuit or was involved in other incidents involving alleged misconduct. ECF No. 269 at 3. Plaintiff does not oppose this motion. Therefore, it is GRANTED as conceded.

Defendants' fourth motion in limine seeks to preclude plaintiff from offering testimony regarding personnel matters involving defendants, including prior complaints concerning job performance and prior disciplinary issues. ECF No. 269 at 5. Again, Plaintiff does not oppose this motion. Therefore, it is GRANTED as conceded.

Defendants' fifth motion in limine addresses the shackling of defendant during the civil trial. Defendants suggest that *Claiborne v. Blauser*, ___ F.3d ____, No. 16-16077, 2019 WL 3820719, at *11 (9th Cir. June 28, 2019), requires an individualized security determination whenever a litigant is shackled during a civil proceeding. Plaintiff has agreed to not oppose shackling out of view of the jury and does not believe a hearing is necessary under *Claiborne*. Accordingly, the Court will permit Plaintiff to be shackled out of view of the jury.

Defendants' sixth and final motion *in limine* seeks to preclude plaintiff from offering or eliciting

testimony or other evidence regarding impeachment on collateral issues. Specifically, Defendants anticipate that Plaintiff will see to impeach Defendants with prior inconsistent statements regarding which Defendant closed the food port door following the incident between Defendant Herrera and Plaintiff. ECF No. 269 at 8. Plaintiff does not dispute which Defendant actually closed the port door and Defendants have obtained leave (from the assigned magistrate judge) to amend their responses to reflect that it was Defendant Herrera who closed the port door. According to Defendants, which individual closed that door has no relation to the facts and issues in this case and therefore does not further presentation of Plaintiff's claims. Accordingly, Defendants maintain that because the facts related to who closed the food port door are not of any consequence to the claims in this case, any information about prior inconsistencies should be excluded as irrelevant. Plaintiff responds that whether Plaintiff assaulted an officer, or whether, in contrast, the assault was fabricated by Defendants, is a central issue in this case. As such, Plaintiff maintains he should be able to present information about Defendants' prior inconsistent admissions. As a general matter, the magistrate judge's ruling permitting Defendants to amend their discovery responses was premised, in part, on the possible admissibility of the prior inconsistent statement for impeachment purposes. ECF No. 290. The Court agrees that this is the appropriate general approach. It is not possible for the Court to determine at this juncture how connected the asserted impeachment evidence may be to material factual events. Therefore, the Court will address this issue, if necessary, when it arises during trial. The parties are directed to raise the matter in advance of any such anticipated cross-examination, either outside the presence of the jury or at sidebar.

**B.** **Plaintiff's Amended Motions *in Limine*[1]**

    **1.** **Plaintiff's Motion *in Limine* #1**

Plaintiff's first motion *in limine* seeks to preclude reference to Plaintiff's and his witnesses' prior

---

[1] Plaintiff initially filed motions in limine pro se. *See* ECF No. 262. Appointed counsel later amended that set of motions, replacing them with the six addressed in this Order. ECF No. 272.

criminal charges not resulting in convictions. Federal Rule of Evidence 608(b) permits questioning "regarding specific instances of misconduct which do not lead to conviction, if the misconduct is probative of the witness' character for truthfulness or untruthfulness" or "challenges a witness's credibility."

As to any evidence of this nature pertaining to Plaintiff, Defendants object that Plaintiff's claims stem from his assertion that Defendants conspired to fabricate an RVR with the intent that Plaintiff be criminally prosecuted. It is undisputed that Plaintiff ultimately entered a *nolo contendre* plea to a criminal charge based on the 2007 assault and had an additional four years added to his sentence. Part of the plea agreement was dismissal of the criminal charges resulting from the 2009 incident. Defendants argue that discussion of the 2009 criminal charges, though not resulting in a conviction, are relevant to Plaintiff's claims and Defendants' ability to give the full context of events following the 2009 incident. Defendants further argue that discussion of the 2009 criminal charges and resolution are highly relevant to Plaintiff's claims that he was wrongfully retained in administrative segregation as the timing of resolution of the criminal matters affects the time for adjudication of outstanding RVRs. Defendants maintain that discussion of these events are necessary for Defendants' defense.

The Court agrees. It does not seem possible to address any of the claims in this case, let alone any possible bases for Defendants' housing in administrative segregation, without providing the contextual explanation that Plaintiff was charged criminally for the 2009 alleged misconduct. It is undisputed that those criminal charges were dismissed and therefore, to minimize prejudice, must be clearly described as having been dismissed. With that condition, as to the 2009 charges brought against Plaintiff, Plaintiff's motion *in limine* is DENIED. Defendants have agreed that conduct not resulting in convictions will not be used to show Plaintiff acted in conformity with that prior conduct or for impeachment.

Defendants also contend that discussion of "other criminal conduct" which did not result in a conviction is also relevant to Plaintiff's claim that he suffers from PTSD as a result of the allegedly

7

fabricated rules violation. ECF No. 281 at 4. This assertion is vague as to what Defendants' are contemplating offering as "other criminal conduct." If Defendants intend to bring in evidence of other incidents apart from the 2009 misconduct, they must raise the matter with the Court outside the presence of the jury.

As to any evidence regarding prior criminal charges not resulting in convictions related to any of Plaintiff's witnesses, the parties do not yet have sufficient information to know whether any such issues will arise. Defendants have requested relevant documentation but have yet to receive it. ECF No. 281 at 2. Therefore, it is premature to rule on the matter. Plaintiff may raise the issue again, if necessary, once the prior disciplinary records of those witnesses is received.

**2. Plaintiff's Motion *in Limine* #2**

Plaintiff's second motion *in limine* seeks to preclude any mention of Plaintiff's admitted gang affiliation. Plaintiff asserts any such evidence will be highly prejudicial.

Defendants rejoin that "[e]vidence of gang affiliation is admissible when it is relevant to a material issue in the case." ECF No. 281 at 5 (quoting *United States v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir. 2000)). Defendants assert Plaintiff's gang affiliation has bearing on his claims against Defendants for placement in a management cell in 2011. Specifically, Plaintiff claims that he was wrongfully retained in administrative segregation following the adjudication of the two outstanding RVRs in July 2011. Plaintiff claims he was placed in a management cell because of the Defendants' conduct in 2009. However, Defendants indicate that the evidence will show that Plaintiff was moved into a management cell after he declined to take a cellmate because the cellmate was a "crip" from Los Angeles, and that Plaintiff himself explained that he did not have a compatible inmate "from the Bay Area" to cell with Plaintiff at CCI. Defendants maintain that they placed Plaintiff in a management cell, so he could remain single-celled and still accommodate the housing shortage at the institution. Based on this proffer, subject to re-consideration depending on the evidence adduced at trial, this motion *in limine* is DENIED.

8

### 3. Plaintiff's Motion *in Limine* #3

Plaintiff's third motion *in limine* appears to have two parts. First, Plaintiff indicates that a "2007 lawsuit" is related to the current lawsuit and suggests it therefore may be discussed at the trial of this case. ECF No. 272. Although it is somewhat unclear to what 2007 lawsuit Plaintiff is referring, the Court assumes (along with Defendants) that Plaintiff is referencing a lawsuit Plaintiff apparently filed following the 2007 incident at Kern Valley State Prison. That lawsuit was not filed until 2010. Defendants therefore maintain that it is not relevant to the incident centrally at issue in this case, which took place in March 2009. However, Plaintiff's claims in this case are not so limited. Plaintiff also complains that he was improperly held in administrative segregation after his RVR was resolved in early 2011. Subject to reconsideration, this motion *in limine* is tentatively GRANTED to the extent Plaintiff can lay a foundation that his 2010 lawsuit regarding the 2007 incident has any connection to matters at issue in this case.

Second, Plaintiff seeks to exclude mention by Defendants of any other lawsuits, complaints, appeals, or prison grievances made by him. ECF No. 272 at 5. Generally speaking, Plaintiff's grievance and litigation history would not be admissible. *See Seals v. Mitchell*, 2001 WL 1399245, *5 (N.D. Cal. Apr. 13, 2011). However, Defendants oppose the motion to the extent that Plaintiff seeks exclusion of any inmate complaints or appeals concerning the allegations in this lawsuit. In particular, Defendants mention a 602 Inmate Appeal filed by Plaintiff regarding his housing in 2011. ECF No. 281. Defendants state, conclusorily, that the Appeal is relevant to his allegations in this case. But, without further details regarding the connection between that appeal and the claims in this case, the Court cannot rule on the objection. Therefore, the motion is GRANTED without prejudice to a showing by Defendants that Plaintiff's Appeal regarding his 2011 housing situation is relevant to the claims to be tried.

### 4. Plaintiff's Motion *in Limine* #4

In his fourth motion *in limine*, Plaintiff seeks to exclude any evidence pertaining to his own prison disciplinary history, other than that related to the 2007 and 2009 RVRs at issue in this case. ECF

No. 272 at 6. Plaintiff objects that evidence of his disciplinary history prior to 2007 and after the 2009 RVR should be excluded as impermissible character evidence, hearsay, irrelevant, and/or based on its prejudicial nature. *Id*.

Defendants again rejoin that any such evidence is relevant to his claims regarding placement in administrative segregation. ECF no. 281 at 7. The Court agrees. To the extent Defendants can lay the foundation that any particular item of prior disciplinary history contributed to Defendants' housing determinations for Plaintiff, evidence of that history is relevant to Plaintiff's claim about being housed in administrative segregation and is therefore admissible and does not create "unfair" prejudice.

Defendants further maintain that Plaintiffs' disciplinary history following the 2009 incident are "directly relevant to his claimed damages for [PTSD]," suggesting that the disciplinary history will be probative of whether he indeed suffered mental distress while the 2009 incident was pending adjudication. ECF No. 281. On this point, the link between plaintiff's disciplinary actions following the 2009 incident and any claimed damages in this case are less clear. More detail will be required to determine admissibility for this purpose. Accordingly, the Court declines to rule at this time on the admissibility of disciplinary evidence for this purpose.

### 5. **Plaintiff's Motion *in Limine* #5**

Plaintiff next seeks to redact racist comments he made in his complaint, discovery responses, and other filings throughout this proceeding. ECF No. 272 at 6. Defendants oppose this request, arguing that "Plaintiff's repeated racial animus throughout the proceedings is relevant to his bias against Defendants and therefore relevant to his claims of conspiracy, retaliation, and fabrication." ECF No. 281 at 9. Defendants note that racially tinged commentary is found not only within the complaint and discovery responses but is also noted within the 2009 RVR. *See* ECF No. 72 (Second Amended Complaint) ¶¶ 8, 11 ("I told [Brannum] 'to get his Nazi ass away from my door, and take Herrera's greasy ass with!"); May 1, 2018 Depo. Trans. (Ex. B) at 79:20-23 ("I did nothing to this fat Mexican, nothing."), 84:8-20 ("I'm the only black man in here if with some fat greasy, some cracker falsely accusing me.").

10

The Court agrees with Defendants that, generally, these statements are relevant to Plaintiff's bias against the Defendants and therefore his credibility in connection with the claims he makes in this case, which include assertions that Defendants fabricated evidence against him. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility." *United States v. Abel*, 469 U.S. 45, 52 (1984). The Court has weighed and balanced the factors as required by law. Plaintiff seeks to exclude this evidence because it might create "unfair prejudice," Fed. R. Evid. 403, but, in light of the connection between his comments and the claims in this case, has failed to demonstrate that any such prejudice would be unfair. The Court expects Defendants to avoid excessive and repetitive reference to these comments, as doing so might cross the "unfairness" line.

**6.    Plaintiff's Motion *in Limine* #6**

Plaintiff next seeks to preclude or limit the testimony of Defense Expert Warden D. Ross, who has been retained to address the disciplinary process within the California Department of Corrections ("CDCR"). Plaintiff seeks to preclude Captain Ross from testifying about issues that "touch on issues of state of mind, regulatory law, as well as the state of mind of the defendants regarding whether the rules violations were properly adjudicated or retaliatory." ECF No. 272. Defendants respond that Captain Ross will not testify about legal conclusions that go to elements of Plaintiff's claims. ECF No. 282 at 11. Rather, he will explain the disciplinary process, the referral process to the district attorney's office, and the procedures applicable to adjudication of rules violations, all of which topics Defendants maintain relevant to Plaintiff's claim that Defendants caused criminal charges to be filed against Plaintiff for retaliatory purposes. Defendants also anticipate that Warden Ross will explain aspects of the adjudication process relevant Plaintiff's claims that he was wrongfully retained in administrative segregation. Defendants do not intend to ask Ross to testify as to whether the underlying 2009 rules violation was fabricated or accurate. However, Defendants maintain that testimony about whether the 2007 and 2009 rules violations were properly adjudicated from a procedural perspective is not an ultimate question of law at issue in this case.

The motion is DENIED in that an expert is allowed to testify on matters not commonly known or understood by a non-expert juror. The subject matter fits into this category. This ruling does not preclude timely and proper question-by-question objections during direct examination.

**7.    Plaintiff's Motion *in Limine* #7**

Plaintiff next moves to preclude or limit the testimony of Defense medical expert Dr. Feinberg, who was designated to testify regarding "harm to Plaintiff, potential causes of harm or claimed injuries, pre-existing injuries or conditions and treatment of Plaintiff, ongoing injuries and treatment of Plaintiff, and future limitations and prognosis of Plaintiff as a result of his alleged injuries." Dr. Fienberg opines that "there is no evidence in the medical records to support Plaintiff's claim that his housing in the administrative segregation unit caused or exacerbated his high blood pressure." He also provides a similar opinion as to plaintiff's PTSD. Plaintiff objects generally to these opinions on hearsay grounds, arguing that there is no showing the Dr. Feinberg's method of simply reviewing a portion of Plaintiff's medical records without ever examining Plaintiff is sufficient to support his opinions. ECF No. 272. Plaintiffs also object more specifically to Dr. Feinberg opinion about PTSD, because he is not a psychologist or psychiatrist.

These objections do not go to admissibility. A physician may base his opinions on medical records and experience/training. *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1125 (9th Cir. 1994) (finding admissible expert testimony based on review of medical records in light of medical experience). Also, whether Dr. Feinberg's experience is sufficient to allow him to opine on the subject of PTSD is a matter more suitable for inquiry in the first instance as part of *Daubert voir dire*, or, alternatively, goes to the weight of any opinions he is permitted to offer on the subject.

**8.    Plaintiff's Motion *in Limine* #8**

Finally, plaintiff seeks to preclude or limit the testimony of Defense Expert Chief B. Moak, who Defendants proffer will testify regarding the classification and housing process within CDCR. Plaintiff seeks to preclude Chief Moak from offering improper legal conclusions about topics such as whether

12

"housing violations were properly adjudicated." ECF No. 272 at 9. Defendants indicate that they do not intend to have Chief Moak testify as to any ultimate legal conclusions in this case. ECF No. 282 at 14-15. From Defendants' opposition papers, it does not seem apparent that they will have him address any topic approaching whether housing violations were properly adjudicated. *Id*. Should the Court be misinterpreting Defendants' intentions, or should those intentions change, Defendants must bring the issue to the Court's attention outside the presence of the jury. Plaintiffs' motion is DENIED without prejudice as unnecessary.

## V. **CONCLUSION AND ORDER**

With respect to the Parties' cross motions to amend the pretrial order, as discussed above, the Parties must make an election. Either they both agree to extend the discovery deadline to address this new information in a measured fashion, an election that will necessitate setting a new trial date, or the case will proceed without any of the new information, including the information that is the subject of the Parties' stipulation. Within ten (10) calendar days of the date of this Order, the Parties shall inform the Court of their election by sending a joint email to ljoorders@caed.uscourts.gov. If they elect to pursue additional discovery, they shall also propose a schedule for that abbreviated process, along with all available trial dates in November and early December.

As to the Parties' motions *in limine*, they are resolved as set forth above.

IT IS SO ORDERED.

Dated: **August 23, 2019**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE